HULSEY *v.* STATE.

Opinion delivered February 23, 1914.

1. HOMICIDE—INSANITY—SUFFICIENCY OF THE TESTIMONY.—Where it appears from the testimony that defendant, because of the wrongful treatment he had received at the hands of the deceased, was angered, grieved or excited at the time he fired the shot, such testimony is insufficient to justify the jury in finding that defendant was insane. (Page 512.)

2. APPEAL AND ERROR—INCORRECT INSTRUCTION—PREJUDICE.—An incorect instruction on the issue of insanity is not prejudicial, when the testimony does not justify the submission of the question of insanity. (Page 512.)

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Fink & Dinning,* for appellant.

In its instruction on the question of insanity the court laid down a wrong test for the guidance of the jury, when it stated: "Before the defendant can be excused on the ground of insanity, the jury must believe from the evidence that the defendant was at the time of the killing without sufficient reason to know what he was doing, or had not sufficient reason to know right from wrong, or that, as a result of mental unsoundness, he had not then sufficient will power to govern his acts by reason of some insane impulse which he could not resist or control." 54 Ark. 588; 186 U. S. 413, 46 L. Ed. 1225; 55 Ark. 259.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

If the instruction errs in not confining the jury to the particular act charged against appellant, that error was cured by the court's giving at appellant's request a correct instruction covering this point and no prejudice resulted.

Moreover, a general exception was not sufficient to call the court's attention to the defect. 106 Ark. 362; 109 Ark. 138.

McCULLOCH, C. J. Appellant, W. C. Hulsey, shot and killed one Frank Stewart on September 3, 1913, in Phillips County, Arkansas, and the grand jury of that county returned an indictment against him for the crime of murder in the first degree. He was convicted of murder in the second degree and prosecutes an appeal to this court from the judgment.

There is no denial of the fact that appellant killed Stewart. It was done in the presence of several witnesses, and appellant tried to justify on the ground that he shot Stewart in necessary self-defense.

It is also claimed that there was evidence tending to show that he was insane at the time the killing occurred.

Both of these questions were submitted to the jury by instructions.

It is conceded that all of the instructions upon self-defense and other questions in the case, except that of insanity, were correct and that the verdict of the jury is conclusive. A reversal of the judgment is sought on the ground that the court erred in its instruction on the question of insanity.

It may be conceded that the instruction on that subject was incorrect according to the law announced by this court. *Bolling* v. *State,* 54 Ark. 588.

But we are convinced, after careful analysis of the testimony, that there was nothing to justify the submission of the question of insanity to the jury. There is no testimony tending to show that appellant was insane at the time of the killing, or at any other time. Appellant's wife was the stepdaughter of Stewart, and she lived with Stewart and his wife (her mother) at the time she intermarried with appellant. That was about two years before the killing occurred. They lived together for a time, and then separated, the wife returning to the home of her parents, where she lived for a considerable time. Three or four months before the killing occurred, appellant and his wife began living together again, and moved to West Helena, a suburb of the city of Helena. Stewart lived seven or eight miles out in the country from Helena. There was ill-feeling between appellant and Stewart and wife on account of the separation of appellant from his wife. During the period of separation and while appellant's wife was living at Stewart's house, he (appellant) went to Stewart's house to visit his wife and baby, and Stewart drew a gun on him, struck him over the head and otherwise mistreated him. It appears, from the testimony, that appellant charged Stewart, not only with causing his wife to leave him, but also with having illicit relations with her. Appellant frequently spoke to his friends and acquaintances about his mistreatment by the Stewarts and appeared to be much disturbed and grieved by it. On the day of the killing

appellant's wife sent a note to her mother informing her of the sickness of a sister in Helena and requesting her mother to come by the house to see her before she went out to see the sick sister. Stewart and his wife drove in late in the afternoon and went by appellant's house, where the latter and his wife were sitting on the porch. They walked out to the buggy, appellant's wife being in front, with her baby in her arms, which she handed up to Stewart at his request. Appellant stepped back into the house, got his pistol and put it in his belt, and walked out behind or to the side of the buggy, reaching there about the time that Stewart took the baby into his arms. Appellant called out to Stewart commanding him to hand the baby back to his wife, and, according to the testimony adduced by the State, fired the shot just as Stewart handed the baby into the arms of his wife. Appellant's account of the transaction, related on the witness stand, is that, when he told Stewart to hand the baby back, Stewart replied, "All right, old chap," and turned around and handed the baby to Mrs. Stewart, and at the same time "reached down to get his gun," and that then he fired. The two eye-witnesses introduced by the State, Stewart's wife and son, testified that appellant fired the shot just as Stewart handed over the baby and that Stewart made no effort to draw a weapon. They say that he had a pistol in his pocket, which, after the shooting by appellant, the boy took out of Stewart's pocket and used in shooting at appellant as he ran away.

The verdict of the jury settled against appellant the issue of self-defense.

No witness testified that appellant was insane at the time of the killing, and the testimony fails to show a state of mind at any time which indicated that he was insane. Several witnesses who were well acquainted with appellant and associated with him during the trouble between him and the Stewarts and the period of his wife's separation, testified that he was considerably exercised about the situation and showed much feeling. Some of them expressed it that he appeared to be broken

up over the separation and the treatment that he had received at the hands of the Stewarts, but the most this testimony establishes is that the appellant was angered, grieved, or excited over it, and not that he was mentally unbalanced. One witness says that his mental condition was not as good as it was formerly. Appellant himself gave a clear account of the shooting, and attempted to justify himself.

The verdict of the jury, reducing the crime to second degree murder, may have been induced by belief, not that appellant was insane, but that his relations with the Stewarts and his feeling of hostility engendered by what he conceived to be their wrongful treatment of him caused him to commit the crime when he walked out to the buggy and saw Stewart take the baby into his arms and that the shooting was not done after premeditation. The jury doubtless gave appellant the benefit of all doubt and found him guilty of the lower degree of murder; but the testimony is not sufficient to justify a finding that appellant was insane at the time he fired the shot. Therefore, the question of insanity should not have been submitted to the jury at all. The instruction laying down an improper test of insanity was, therefore, not prejudicial.

Judgment affirmed.