[Criminal No. 509.　Filed October 19, 1921.]

[201 Pac. 91.]

# RICARDO LAUTERIO, Appellant, v. STATE, Respondent.

1. HOMICIDE—EVIDENCE HELD INSUFFICIENT TO SHOW INSANITY.—In a prosecution for murder, evidence that defendant attempted to commit suicide by taking poison, and as a result was spasmodic and had paroxysms of vomiting, is not sufficient to establish his insanity at the time of the crime.

2. CRIMINAL LAW—INSTRUCTION ASSUMING FACTS NOT IN RECORD SHOULD NOT BE GIVEN.—Requested instructions assuming a state of facts which do not exist in the record should not be given.

3. HOMICIDE—MERE ATTEMPT OF ACCUSED TO COMMIT SUICIDE HELD NOT TO JUSTIFY INSTRUCTION AS TO SANITY.—In a prosecution for murder, a mere attempt by accused to commit suicide after committing the crime is not sufficient evidence to submit by instruction the issue of his sanity to a jury.

4. HOMICIDE — INSTRUCTION THAT IF, FROM EVIDENCE, JURY HAD REASONABLE DOUBT AS TO SANITY OF DEFENDANT, THEY SHOULD ACQUIT, HELD ERRONEOUS.—In prosecution for murder, an instruction that, if the jury entertain a reasonable doubt as to the sanity of the accused at the time of the commission of the crime, they should acquit, does not correctly state the law, since the question of his guilt depends on his ability to distinguish between right and wrong.

5. CRIMINAL LAW—MISCONDUCT OF ATTORNEY DURING TRIAL, IN ORDER TO BE AVAILABLE ON APPEAL, MUST APPEAR IN THE RECORD.—Misconduct of attorney in abusing defendant must appear in the record, in order to be available on appeal.

6. HOMICIDE—HELD THAT DEATH PENALTY WAS NOT EXCESSIVE.—In prosecution for murder committed deliberately and without legal justification, held, that death penalty was not excessive.

---

1.　On weakness of mind as affecting responsibility for criminal act, see note in 10 L. R. A. (N. S.) 999.

On presumption and burden of proof as to sanity in criminal cases, see notes in 3 Ann. Cas. 926; 15 Ann. Cas. 95; 44 L. R. A. (N. S.) 119.

4.　On instruction in homicide cases upon rule of reasonable doubt with reference as to cause of death, see note in 49 L. R. A. (N. S.) 913.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. W. J. Fellows, for Appellant.

Mr. W. J. Galbraith, Attorney General, Mr. R. E. L. Shepherd, County Attorney, for the State.

ROSS, C. J.—The appellant appeals from the verdict and judgment of conviction of murder in the first degree entered against him on the eighth day of February, 1921, in the superior court of Maricopa county. The jury in its verdict fixed the punishment at death, and the court thereupon sentenced the appellant to be hanged on the twenty-first day of April, 1921, at the state penitentiary. The errors assigned by appellant are four in number, as follows:

"I. That the verdict and judgment are contrary to the law and evidence in this: That at the time of the commission of the crime the evidence shows that defendant was not rational, but was beyond doubt insane and unable to comprehend the wrongfulness of his act, and incapable of forming a criminal intent.

"II. That counsel for the prosecution were guilty of misconduct during the course of the trial and during the argument, neither of which, when once placed before the jury, could have been cured by rebuke or admonition from the court.

"III. The court erred in refusing an instruction on insanity offered by the defendant.

"IV. That the sentence is excessive and is too severe in this case."

We have carefully examined the transcript of the testimony, and especially that part of it appellant cites and relies upon to sustain the proposition contained in his first assignment, to wit, "that defendant was not rational, but was beyond doubt insane," etc. There is not an iota of evidence to sustain this

assignment. All the testimony appellant claims sustains the proposition pertains to his acts and conduct and condition after he had taken the life of the deceased and not before. When appellant was apprehended, a short distance from the place where he inflicted the mortal wound that killed deceased, he showed symptoms of poisoning, and stated that he had taken strychnine. Witnesses testified that he was having paroxysms of vomiting, and was spasmodic when found and for a time thereafter; and it is these things or acts appellant claims as evidence of insanity, together with the fact that he attempted to commit suicide. It was upon such evidence that appellant asked the court to instruct the jury on the question of insanity, the refusal of which he makes his third assignment.

The instruction so requested is in the following language:

"You are instructed that all the evidence tending to prove insanity of the defendant is to be weighed by you in your deliberations, and that the fact that the defendant attempted to commit suicide must be weighed along with other facts tending to prove insanity of the defendant at the time of the commission of the crime, and after due deliberation, if you entertain a reasonable doubt as to the sound mind of the defendant at the time of the commission of the crime, you will return a verdict of not guilty."

It is elementary that instructions must be based upon the evidence. Requests assuming a state of facts that do not exist in the record should never be given. We do not understand that the mere attempt to commit suicide by appellant would be evidence justifying the court to submit the issue of his sanity to a jury. *Hopkins* v. *State,* 4 Okl. Cr. 194, 108 Pac. 420, 111 Pac. 947. We think it would have been error for the court to have given the requested instruction, in the absence of some evidence on that issue.

23 Ariz.—2

*Mitchell* v. *State,* 52 Tex. Cr. 37, 106 S. W. 124; *State* v. *Gruber,* 19 Idaho, 692, 115 Pac. 1; *Hulsey* v. *State,* 111 Ark. 510, 164 S. W. 273; *State* v. *Buonomo,* 87 Conn. 285, 87 Atl. 977.

The instruction was properly refused for another reason. It fails to correctly state the law. It is not enough that the jury "entertain a reasonable doubt as to the sound mind of the defendant at the time of the commission of the crime." They must entertain a reasonable doubt of his ability to distinguish between right and wrong as applied to the act involved.

"The authorities are unanimous in declaring that weakness of, or deficiency in, any one of the mental functions, is not of itself sufficient to excuse the perpetrator of a criminal act. The ancient and generally accepted test for determining the punishability of one taking life is the capacity to distinguish right from wrong." 13 R. C. L. 710, § 10.

The second assignment is based upon misconduct of the attorneys for the prosecution during the course of the trial and during the argument. The appellant fails to point out anywhere in the record any fact whatever to sustain this assignment. He asserts in his brief that the attorney for the prosecution "abused the personality of defendant, calling him a dirty dog and a skunk." This language, if uttered by the attorney, is not to be found in the record, and we have only the assertion of the appellant that it was used. If the prosecution was guilty of any misconduct, this court would have to insist that it be evidenced in a more regular and solemn way than the mere statement of appellant in his brief.

Turning to the fourth and last assignment, we give a succinct statement of the facts of the case in refutation of the proposition therein contained:

The appellant and the woman he killed, Adelina Sosa de Barillos, had been living for several months

in illicit relations, and were so living in a tent as cotton-pickers on the O'Neil ranch, about seven and one-half miles northwest of Phoenix, Arizona, on the fourth day of November, 1920, when they had a quarrel and the appellant left. Three days later, on the seventh day of November, the appellant saw the deceased in the city of Phoenix, and, according to his testimony only, she was with O'Neil, the rancher. The defendant procured a knife (a butcher-knife made over, with a pointed, stout, blade about six inches long) and returned to the ranch, to seek reconciliation with the woman. He stated she turned him down and refused to have anything more to do with him, that he waited at her bedside, she being in bed, in the tent, from 3 o'clock until 5:30 o'clock in the morning of November 8, 1921, and, becoming convinced that the woman would have nothing more to do with him, he put the knife to her right temple with his left hand and drove it into her brain with his hand. He then ran out into the cotton field about 100 yards from the tent, took a dose of strychnine, and was later found by ranch hands. The scream of the deceased, at the time she was stabbed, awakened her brother, sleeping at the foot of her bed, and she embraced him saying, "Ricardo has killed me." The knife was removed from the woman's head at St. Joseph's hospital the same day, and the woman died that evening.

From the facts we are not surprised that the jury returned the verdict inflicting the death penalty. It would be difficult to conceive of a more cold-blooded, atrocious murder than the facts show in this case. The only excuse the appellant gave for taking the woman's life was that she had refused to live with him any longer. This in law was no excuse. The jury saw in his conduct the highest culpability, and came to the conclusion that the law demanded the in-

fliction of the highest penalty, and we think rightly so. The record discloses that the appellant had a fair trial, and that the court's instructions to the jury submitted the issues according to the principles of law governing in such cases.

The judgment of the lower court is affirmed.

The date, April 21, 1921, originally fixed for appellant's execution, having passed, it is ordered that judgment be entered by this court fixing the time when the original sentence of death shall be executed as required by section 1177 of the Penal Code.

McALISTER and FLANIGAN, JJ., concur.