560 P.2d 41

**STATE of Arizona, Appellee,**

v.

**Willie Lee RICHMOND, Appellant.**

No. 2914.

Supreme Court of Arizona,
In Banc.

Dec. 20, 1976.

188

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Grove M. Callison, Asst. Attys. Gen., Phoenix, James M. Howard, Pima County, Deputy County Atty., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Frederick J. Dardis, Anne-Marie Brady, Asst. Public Defenders, Edward M. Bolding, Tucson, for appellant.

HOLOHAN, Justice.

Willie Lee Richmond was tried and convicted of the first-degree murder of Bernard Crummett in Pima County, Arizona. A sentencing hearing was held, and the defendant was sentenced to death.

Evidence introduced at trial showed that on the evening of August 25, 1973, the victim went into the Birdcage bar in Tucson and met Becky Corella, a dancer working there. Later that evening, Becky and Crummett went out to the parking lot to persuade the defendant to allow his 15-year-old girlfriend, Faith Erwin, to prostitute herself with Crummett. When both the defendant and Faith refused, a conversation ensued and eventually Becky decided to prostitute herself with Crummett. All four persons drove in Becky's borrowed station wagon to her motel apartment on the Benson highway.

When Becky and Crummett returned from the bedroom, the defendant whispered to Faith that the three of them were going to rob the victim, but not in the apartment because Crummett would remember the location. In the company of his two accomplices, the defendant drove the victim to a remote area outside Tucson and stopped the vehicle, saying the station wagon had a flat tire. When the victim got out of the car, the defendant beat him with his fists and rocks rendering the victim unconscious. Thereafter Becky and the defendant went through the victim's pockets taking his watch and wallet. In leaving the scene the vehicle was twice driven over Crummett who was still lying unconscious on the ground. The victim died from his injuries.

Although granted immunity, Becky Corella was not called upon to testify by either side. At trial, the crucial evidence against the defendant was the testimony of Faith Erwin and the defendant's own extrajudicial admissions. The defendant did not testify. The state's theory was that he perpetrated the homicide while engaged in robbery and thus committed first-degree murder. The primary defense theory was that because the robbery had terminated prior to the homicide the defendant could not be found guilty of first-degree murder under a felony-murder theory.

After the defendant was convicted, a sentencing hearing was held pursuant to A.R.S. § 13–454 to determine the sentence. The court rendered a special verdict finding the existence of two aggravating circumstances: 1) that the defendant was previously convicted of a felony involving the use or a threat of violence on other persons, and 2) that the defendant had committed the offense in an especially heinous and cruel manner. It found none of the statutory mitigating circumstances to be present. Based on its findings, the court sentenced the defendant to death. Subsequently, the defendant filed a Rule 32 petition claiming newly discovered evidence. The petition was denied. He appeals from the judgment and sentence and from the denial of his Rule 32 petition.

The defendant's appeal raises the following issues:

I. Did the trial court commit reversible error in submitting the case to the jury on a felony-murder theory?

II. Did the trial court err by admitting the defendant's extrajudicial statements into evidence?

III. Was the testimony of the defendant's accomplice corroborated?

IV. Did the trial court abuse its discretion by admitting the photographs of the corpse?

V. Did the trial court commit reversible error by refusing to grant the defendant's requests for mistrials which were based on the alleged inadmissibility of certain items accepted into evidence?

VI. Did the court commit reversible error in summarily denying the defendant a Rule 32 hearing in relief?

VII. Does the imposition and implementation of the death penalty constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States?

VIII. Is the imposition of the death penalty excessive in this instance?

I.

The defendant submitted proposed instructions directing the jury not to consider any felony-murder instructions if they found that the robbery had been completed prior to the death of the victim. He contends that it was reversible error for the trial court to deny these instructions and permit a conviction for murder in the first degree based on a felony-murder theory.

In a leading case, the Missouri Supreme Court stated that the felony-murder statute, "applies where the initial crime and the homicide were parts of one continuous transaction, and were closely connected in point of time, place and causal relation, as where the killing was done in flight from the scene of the crime to prevent detection, or promote escape." *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632 at 637 (1936). The

majority of American jurisdictions have remained in accord with this rule. Annot. 58 A.L.R.3d 851 (1974).

Here, the evidence shows that the actions which caused the victim's death transpired during or immediately following the robbery as a part of the chain of events which the defendant's deliberate acts had set in motion. The defendant and his accomplices were fleeing from their crime when the vehicle was driven over the victim. The victim's death was a direct and proximate result of the robbery and so constitutes first-degree murder. *State v. Hitchcock*, 87 Ariz. 277, 350 P.2d 681 (1960), *cert. denied*, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821. Furthermore, the escape was an essential part of the robbery.

Recently, we have said, "[W]hen the felony is so entwined with the murder that it is part of that murder we will not hold a stopwatch on the events or artificially break down the actions of the defendant into separate components in order to avoid the clear intent of the legislature in enacting the felony-murder rule." *State v. Richmond*, 112 Ariz. 228, 540 P.2d 700 (1975). Thus the facts in the instant case do not justify the instructions requested by the defendant and do support his conviction for felony-murder.

II.

The defendant contends that certain incriminating statements he made on September 11, 1973, while in custody were admitted at trial in violation of his Sixth Amendment right to counsel. At the time the statements were taken the defendant was already represented by the public defender on two unrelated murder charges. *See State v. Richmond, supra*, and *State v. Richmond*, 23 Ariz.App. 342, 533 P.2d 553 (1975). He had received a preliminary hearing and been bound over for trial on one of the charges. Earlier that same day he had been arraigned on the other charge after the return of a grand jury indictment.

Two police officers came to "the holding tank" where the defendant had been re-

turned after his arraignment, and served him with a warrant for his arrest on charges of robbing and murdering Bernard Crummett, the victim in this case. The officers read the defendant his *Miranda* rights and then recorded the statement he agreed to make.

They made no effort to contact the public defender before taking the statement; nor did they ask the defendant if he wished to summon the deputy public defender who was representing him on the other murder charges. Under similar circumstances, we have held that law enforcement officers are not under a constitutional duty to contact a lawyer for the accused if he makes a valid waiver of that right. *State v. Marks*, 113 Ariz. 71, 546 P.2d 807 (1976). *See also Biddy v. Diamond*, 516 F.2d 118 (5th Cir. 1975); *U.S. v. Zamora-Yescas*, 460 F.2d 1272 (9th Cir. 1972), *cert. denied*, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972); *Coughlan v. U.S.* 391 F.2d 371 (9th Cir. 1968), *cert. denied sub. nom.*, *Coghlan v. U.S.*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968).

█ The defendant also contends that his admissions were not preceded by a knowing, intelligent and voluntary waiver of his constitutional rights. The evidence taken at the voluntariness hearing controverts that contention. The defendant did not testify at the hearing nor did he introduce any evidence to support his allegation. Since the record of the hearing supports the conclusion of the trial court, the statements of the defendant were properly found to be voluntary. *State v. Durham*, 111 Ariz. 19, 523 P.2d 47 (1974); *State v. Hughes*, 104 Ariz. 535, 456 P.2d 393 (1969).

██ Along with his Sixth Amendment argument the defendant contends that his admissions must be suppressed because they were obtained in violation of EC 7–18 and DR 7–104 of the Code of Professional Responsibility. These provisions forbid an attorney to converse with an opposing party outside the presence of that party's counsel. The defendant argues that the deputy county attorney violated the code when he used

the defendant's statements which law enforcement officers had obtained by talking with the defendant outside the presence of his counsel.

The defendant does not allege, nor is there anything in the record which indicates, that the Pima County Attorney or staff were aware of that particular interrogation. Instead, he claims that as an indigent criminal defendant, dependent on publicly furnished counsel, he was denied a protection afforded to civil litigants with private counsel. We find no merit in that claim. The procedures for protecting the rights of criminal defendants have been outlined by the U. S. Supreme Court in such decisions as *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The cited portions of the Code of Professional Responsibility are generally assumed to be for the purpose of affording civil litigants some of the protection which the Constitution guarantees to criminal defendants. *State v. Nicholson*, 463 P.2d 633 (Wash.1969). As long as law enforcement officers comply with the requirements of the Constitution in the pursuit of their investigation, an incriminating statement which is freely and voluntarily given is admissible. The trial court found that the statement in question was freely and voluntarily given and that the police officers had complied with the requirements of *Miranda*. The record supports this finding, so it was not error to admit the statement.

### III.

█ The defendant claims he was convicted solely on the basis of the uncorroborated testimony of an accomplice. No conviction shall be had on the testimony of an accomplice unless it is corroborated by other evidence which tends independently to link the defendant with the commission of the offense. A.R.S. § 13–136.[1] The state argues that the witness, Faith Erwin, was not an accomplice. We have held that an aider or abettor in the commission of a crime is an accomplice. *State v. Rackley*,

---

1. This statute, in effect at the time of the defendant's trial, has since been repealed. Ch.

116, § 1, Session Laws 1976, 32d Leg., 2d Reg. Sess. (1976).

106 Ariz. 424, 477 P.2d 255 (1970). In the instant case there was preconcert, in that Faith Erwin knew of the plan to rob Bernard Crummett before she accompanied him on his final automobile ride. *Cf. State v. Sims*, 99 Ariz. 302, 409 P.2d 17 (1965). While her participation was minor the fact that she joined in the venture establishes her as an accomplice.

■ The accomplice's testimony is amply corroborated. The results of the autopsy, the photographs of the victim's body at the scene of the crime, the discovery of a wallet similar to the victim's in the murder vehicle and the identification of the defendant as a frequent driver of that vehicle all tend to link the defendant with the offense. The most conclusive corroboration comes from the defendant's own statement in which he admits striking and robbing the victim. Taken together, the evidence corroborating Faith Erwin's testimony is overwhelming.

■ In oral argument before us the state noted that the trial court failed to instruct the jury on the applicable principles of law concerning the necessity for corroboration of the testimony of an accomplice. In *State v. Howard*, 97 Ariz. 339, 400 P.2d 332 (1965), we held that the failure to give such an instruction when warranted, even though not requested by either side, is reversible error. In *State v. Brewer*, 110 Ariz. 12, 514 P.2d 1008 (1973), we modified that opinion.

"[W]here the evidence of corroboration is overwhelming and the defendant does not request a corroboration of accomplice instruction, the giving of such an instruction on the courts' own motion is not mandated by our statute and the failure to give such an instruction should not be considered fundamental error." *State v. Brewer*, 110 Ariz. 12, 17, 514 P.2d 1008, 1013.

In light of the overwhelming evidence of corroboration in the instant case the failure to give a corroboration of accomplice instruction was not reversible error.

IV.

■ The defendant next claims that the trial court abused its discretion in ad-

mitting certain photographs of the victim's corpse because their prejudicial effect outweighed their probative value. At trial the defendant offered to stipulate to the identity of the victim and to his being run over by a vehicle as the cause of death. The state wanted to expand the stipulation to include the defendant striking the victim's head with a rock as a factor contributing to his demise. The defendant would not agree.

The discretion to admit or exclude gruesome photographs is vested in the trial court, and competent evidence will not be excluded simply because it may arouse emotions. *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975); *Young v. State*, 38 Ariz. 298, 299 P. 682 (1931). In addition to being relevant to the state's theory of the case, the exhibits corroborate Faith Erwin's testimony by pictorially representing some of the circumstances which she described, and some of the photographs were used by the pathologist to illustrate his testimony. Because their probative value had been established, the trial court did not err in admitting the photographs of the deceased.

V.

The defendant contends that the trial court committed reversible error by not granting his motions for mistrial when allegedly inadmissible and prejudicial evidence was introduced. He refers to three instances in the record to support his contention.

■ The first instance occurred during the voir dire examination of the prospective jurors. The prosecutor asked:

"Q. Is there anyone on the panel who feels that the crimes or murder is any less serious when they occur when involved with narcotics addiction?"

No objection was lodged by the defendant at that time, and both the prosecutor and the defendant passed the jury panel. At the end of the case the defense did move for a mistrial because of the voir dire statement. Unless there has been a timely ob-

jection made at trial to a question asked during jury voir dire, we do not consider the matter on appeal. *Argetakis v. State*, 24 Ariz. 599, 212 P. 372 (1923); *Kinsey v. State*, 49 Ariz. 201, 65 P.2d 1141 (1937).

■ The second instance cited by the defense concerns the testimony of Faith Erwin on redirect examination by the prosecution. She testified that she had used heroin previously as well as on the day of the homicide. The defense objection to the prosecutor's question about who was present when she used heroin was sustained by the court. A motion for mistrial was denied. The defendant argues that the inference was left that he was present and somehow connected with this illegal activity.

The subject of Faith Erwin's heroin habit was introduced by the defense in cross-examination. The defense also brought out that for some two weeks before the homicide the witness had been using heroin every day. It further brought out that the witness was under the influence of heroin while she was with the defendant and Becky Corella on the day of the homicide. The trial judge's ruling in denying a mistrial was not an abuse of discretion because the matter had been developed by the defense on cross-examination. Any inference concerning drug use originated from testimony introduced by the defense.

The defense also urges that a mistrial should have been declared when the prosecution, on redirect examination, asked Faith Erwin to whom she gave the money for an act of prostitution. She replied that it was to the defendant. The defense motion to strike was granted, but the motion for a mistrial was denied.

■ In addition to granting the defense motion to strike that testimony, the trial court instructed the jury to disregard both the question and answer. The defense argues that this was not sufficient to protect the defendant from the prejudice caused by the answer. To decide this issue we must examine the statement for its possible effect on the jury. *State v. Arroyo*, 99 Ariz. 68, 406 P.2d 734 (1965).

The total circumstances of the case disclose that the defendant was involved with persons connected with prostitution, and that the defendant used such association to carry out his scheme to rob the victim in this case. The defendant originally met the victim when he and Becky Corella approached the defendant and Faith Erwin to arrange an act of prostitution. The defendant took part in discussions which culminated in the defendant accompanying the others to the motel where Becky Corella performed an act of prostitution. Viewed in the light of circumstances shown by the admissible evidence, the action of the trial court in striking the questioned testimony and instructing the jury to disregard it was sufficient to overcome any prejudice to the defendant. The denial of a mistrial was not error.

The third instance complained of was the playing of the tape in which the defendant recounted his version of the circumstances surrounding the murder. In the course of his narration the defendant mentioned that he and Faith smoked marijuana while parked at the Birdcage awaiting Becky and that after dividing the proceeds of the robbery he and Faith "fixed up again." He also stated that Becky Corella was carrying a pistol on the night in question. The defendant argues that those isolated pieces of testimony painted him as a marijuana smoker, a dope addict and a gun carrier, and that none of these facts is relevant to the crime charged.

■ Evidence of other crimes which the defendant may have committed is prejudicial and usually inadmissible. *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974). One of the well-established exceptions to the general rule disallowing such evidence is the complete story exception.

"[E]vidence of another offense, misconduct or prior bad acts is admissible to prove the complete story of the crime even though there is revealed other prejudicial facts, such as the defendant has committed other criminal offenses or misconduct." *State v. Collins*, 111 Ariz. 303, 305, 528 P.2d 829, 831 (1974).

*See also State v. Villavicencio,* 95 Ariz. 199, 388 P.2d 245 (1964); *State v. Evans,* 110 Ariz. 380, 519 P.2d 182 (1974).

 The incidents described in the contested testimony are so blended with the commission of the instant offense that they explain the circumstances of the crime. *State v. Villavicencio, supra.* The defendant's description of the activities on the night of the crime provide evidence of his intent and plan. These clearly admissible items are so entwined with the other bad acts that it is virtually impossible to separate them. The defendant's explanation of the events which happened preceding and subsequent to the homicide were admissible in order that the full story could be understood. There was no error in the admission of the evidence.

## VI.

The defendant contends that the trial court erred in summarily denying him a hearing on his Rule 32 post-conviction relief petition. The defendant appended to his petition affidavits from two witnesses who allegedly would testify that Becky Corella had told them that she, rather than the defendant, was driving the vehicle when it ran over Bernard Crummett. Based on his contention that the robbery had been terminated before the victim was crushed by the vehicle, the defendant argues that these affidavits present newly discovered material facts which would have changed the verdict had they been introduced at trial. Such a ground is within the scope of Rule 32.1. He further argues that he was entitled to an evidentiary hearing pursuant to Rule 32.8, Arizona Rules of Criminal Procedure, 17 A.R.S. In the language of the comment to Rule 32.6:

"If the court finds from the pleadings and record that all of the petitioner's claims are frivolous and that it would not be beneficial to continue the proceedings, it may dismiss the petition. . . . However, if the court finds any colorable claim, it is required by *Townsend v. Sain,* 83 S.Ct. 745, 372 U.S. 293, 9 L.Ed.2d 770

(1963) to make a full factual determination before deciding on its merits."

 To be colorable, a claim has to have the appearance of validity, i. e., if the defendant's allegations are taken as true, would they change the verdict? We are satisfied that they would not. The newly discovered evidence must be such that it does not merely bolster, impeach or contradict testimony offered at the trial. *State v. Morrow,* 111 Ariz. 268, 528 P.2d 612 (1974). The statements of the defendant's affiants merely contradict Faith Erwin's testimony that the defendant was driving.

Furthermore, we have rejected the defendant's theory that the escape was not a part of the robbery. *See I, supra.* Arizona law states that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals in any crime so committed. A.R.S. § 13–139. The record demonstrates that the defendant instigated the robbery, battered the victim into unconsciousness and took his belongings. All who participate in the commission of a crime are equally guilty as principals. *State v. Collins, supra.* Even if we accept as true the defendant's allegation in his Rule 32 petition, we must find him criminally liable for this murder regardless of whether he or his accomplice was driving the vehicle at the time in question.

## VII.

 The defendant challenges the constitutionality of the death penalty and Arizona's death penalty statute, A.R.S. § 13–454. The Federal Supreme Court has declared that the imposition of the death penalty for the crime of murder does not, under all circumstances, violate the Eighth and Fourteenth Amendments of the United States Constitution. *Gregg v. Georgia,* 153 U.S. 428, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Nor does it violate the Arizona Constitution. We addressed this issue in *State v. Endreson,* 108 Ariz. 366, 498 P.2d 454 (1972) and in that pre-*Furman* case ruled as a matter of state constitutional law

that the death penalty is not cruel and unusual punishment under Article 2, § 15 of the Arizona Constitution. *See also State v. Maloney*, 105 Ariz. 348, 464 P.2d 793 (1970); *State v. Malumphy*, 105 Ariz. 200, 461 P.2d 677 (1969); *State v. Jones*, 95 Ariz. 4, 385 P.2d 1019 (1963). We have found nothing to persuade us to depart from our rule in *Endreson* that the imposition of the death penalty does not violate the Arizona Constitution.

■ As part of his broad attack on Arizona's system, the defendant argues that prosecutorial discretion, plea bargaining, jury discretion to convict on a lesser-included offense and the possibility of sentence commutation or executive clemency are mechanisms of the arbitrary selectivity found unconstitutional in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This point was raised in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976):

"The existence of these discretionary stages is not determinative of the issues before us. . . . Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." 428 U.S. 153, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859, 889.

■ The defendant contends that standards to guide a sentencing body are impossible to formulate. The *Gregg* court held that a statute which gives the sentencing authority "adequate information and guidance" would meet the concerns expressed in *Furman*. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 2935, 49 L.Ed.2d 859, 887 (1976). Arizona's system for the imposition of the death penalty, based on aggravating and mitigating circumstances, insures that the sentencing authority is given adequate information and guidance.

The defendant further contends that the legislative criteria are too vague and sub-

jective to satisfy *Furman*. In *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court was faced with similar challenges to a capital sentencing procedure which, in this context, is indistinguishable from the Arizona statute. *State v. Murphy*, 113 Ariz. 416, 555 P.2d 1110 (1976). That court stated:

"The directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable the various aggravating circumstances to be weighed against the mitigating ones." *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 926 (1976).

We conclude that the Arizona statute satisfies the requirements of due process and equal protection.

■ The defendant argues that the statutory method for determining sentence after the special verdict has been returned is unconstitutionally ambiguous.[2] According to the defendant's theory, because the subsection does not specifically limit the mitigating circumstances which could be considered by a trial court to those enumerated in subsection F, it allows the judge to consider any mitigating circumstances he chooses. The defendant also contrasts the language in subsection E, "aggravating circumstances to be considered shall be the following: . . ." with the language in subsection F, "mitigating circumstances shall be the following: . . ." We find his construction of the statute to be incorrect.

The purpose of A.R.S. § 13–454 is to confine the discretion of the sentencing authority within defined limits. We reject the defendant's construction and hold that subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F. For the same reason we find the argument that the statute allows the trial judge to

**2.** "D. In determining whether to impose a sentence of death or life imprisonment without possibility of parole until the defendant has served twenty-five calendar years, the court shall take into account the aggravating and mitigating circumstances enumerated in sub-sections E and F and shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection E and that there are no mitigating circumstances sufficiently substantial to call for leniency." A.R.S. § 13–454.

**196**

impose the death sentence even if no aggravating circumstances are found to be an incorrect interpretation of A.R.S. § 13–454. *See State v. Murphy, supra.*

The defendant finally argues that it is unconstitutional to leave the determination of sentence to the judge. The Supreme Court rejected that argument in *Proffitt v. Florida, supra,* by declaring that it had never suggested that jury sentencing was constitutionally required.

■ When a death sentence is imposed appeal is automatic, 17 A.R.S. Rules of Criminal Procedure, Rule 31.2(b), and A.R.S. § 13–1711 vests jurisdiction in this court. Because of the unique severity of the penalty we will accord prompt consideration to appeals from an imposition of the death sentence.

■ The legislature charged this court with the duty to correct sentences which are illegal and sentences where we find that the punishment imposed is greater than the circumstances of the case warrant. A.R.S. § 13–1717. It has been our policy not to disturb the sentence imposed by the trial court, absent a clear abuse of discretion, when it is within the statutory limits. *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976); *State v. Moody,* 67 Ariz. 74, 190 P.2d 920 (1948). However, the gravity of the death penalty requires that we painstakingly examine the record to determine whether it has been erroneously imposed. *State v. Maloney, supra.* Furthermore, because A.R.S. § 13–454 sets out the factors which must be found and considered by the sentencing court, we necessarily undertake an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances, *e. g., State v. Murphy, supra; State v. Verdugo,* 112 Ariz. 288, 541 P.2d 388 (1975). We must determine for ourselves if the latter outweigh the former when we find both to be present.

■ In performing this review we find it necessary to determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factors; whether the evidence supports the sentencing court's finding the existence of a statutory aggravating circumstance(s); whether the evidence supports the sentencing court's finding the absence of the statutory mitigating circumstance(s); whether mitigating circumstances found to be present are sufficiently substantial to call for leniency; and, whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *Accord Gregg v. State,* 233 Ga. 117, 210 S.E.2d 659 (1974), *aff'd, Gregg v. Georgia, supra* (1976). Because A.R.S. § 13–454(C) directs the court to set forth in writing its findings on the existence or nonexistence of each of the circumstances, a meaningful appellate review of each death sentence is facilitated.

### VIII.

The defendant's final contention is that the imposition of the death penalty is excessive. In this case the sentencing court found two aggravating circumstances to be present: 1) the defendant was previously convicted of a felony in the United States involving the use or a threat of violence on another person, and 2) the defendant committed the offense in an especially heinous, cruel or depraved manner.

The state submitted copies of the defendant's photograph, fingerprint record and commitment order, all certified by the Arizona State Prison Records Officer. The state also called the victim in the prior conviction, and that witness identified the defendant as the one who had kidnapped him at knifepoint. The sentencing court did not err in finding the existence of the first aggravating circumstance. A.R.S. § 13–454(E)(2).

The defendant argues that the terms "an especially heinous, cruel, or depraved manner" are so imprecise and indefinite as to leave the discretion of the sentencing authority virtually unfettered. Because second aggravating circumstance has been established a resolution of this issue is not necessary. We note, however, that the

Florida Supreme Court defined strikingly similar terms [3] as being directed only at the conscienceless or pitiless crime which is unnecessarily torturous to the victim. *State v. Dixon*, 283 So.2d 1 (Fla.1973); *see also Alford v. State*, 307 So.2d 433 (Fla.1975); *Halliwell v. State*, 323 So.2d 557 (Fla.1975). This construction was found not to be impermissibly vague by the United States Supreme Court. *Proffitt v. Florida, supra.*

■■■■■■ At the sentencing hearing the defendant called two psychiatrists in an attempt to place the first mitigating circumstance into issue. That circumstance reads as follows:

"F. Mitigating circumstances shall be the following:

"1. [Defendant's] capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–454(F)(1)

This circumstance can be established by demonstrating either of two conditions: an impairment of the capacity to appreciate wrongfulness or an impairment of the capacity to conform. In neither case need the impairment be so great as to constitute a defense to prosecution.

The first condition involves a cognitive deficiency. Under Arizona law, when a defendant's capacity to appreciate the wrongfulness of his conduct is totally impaired that constitutes a defense to prosecution under the M'Naghten rule because the defendant did not know what he was doing was wrong. *State v. Sisk*, 112 Ariz. 484, 543 P.2d 1113 (1975); *Lauterio v. State*, 23 Ariz. 15, 201 P. 91 (1921); *M'Naghten's Case*, 10 Clark & Fin. 200, 8 Eng. Reprint 718 (1843). By enacting A.R.S. § 13–454(F)(1), the legislature has directed the sentencing court to take into account as a mitigating circumstance a deficiency in the cognitive process, which while significant, is insufficient to constitute a defense to the crime.

■■■■ The second condition raises an issue heretofore not found in this state's criminal law. A.R.S. § 13–454(F)(1) directs the sentencing court to consider a significant impairment of the defendant's capacity to conform his conduct to the requirements of law. Thus, the legislature has authorized an inquiry into the volitional aspects of the human mind for the limited purpose of determining the sentence to be imposed on persons already convicted of first-degree murder. Because this provision in no way disturbs this state's long-standing adherence to the M'Naghten rule of criminal responsibility, no impairment, no matter how great, of a defendant's volitional capacity can constitute a defense to crime. *See State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965).

■■■■ The psychiatric testimony offered by the defendant characterized him as a sociopath, that is, a person with a character or personality disorder. The threshold question presented is whether a character or personality disorder qualifies as an impairment within the meaning of A.R.S. § 13–454(F)(1). We believe it does not. Our conclusion that character or personality disorders are not mitigating circumstances within the meaning of the statute is based upon an analysis of the section in question and its origin.

■■■■ The impairment of capacity described in A.R.S. § 13–454(F)(1) is one which is significant but not to such a degree to constitute a defense. For an impairment to be considered a defense, an accused must be suffering from a mental disease or defect which renders him unable to appreciate the nature or wrongfulness of his conduct. *State v. Schantz, supra*. A psychopathic or sociopathic condition has never been accepted as a defense to a criminal act in Arizona. *State v. Crose*, 88 Ariz. 389, 357 P.2d 136 (1960).

---

3. "The capital felony was especially heinous, atrocious, or cruel." Fla.Stat. § 921.141(5)(h), F.S.A.

In the Mental Health Code the legislature has defined mental disorders as excluding character and personality disorders. A.R.S. § 36–501(18). This indicates another instance when the legislature has distinguished between significant mental disorders and character and personality disorders.

Of greater significance, however, is the fact that the language adopted by the legislature for the section in question is similar to that used in the Model Penal Code[4] of the American Law Institute. The Model Penal Code excludes character or personality disorders as an element excusing criminal responsibility. The reason for such exclusion is explained in the comments to the model code:

"The reason for the exclusion is that, as the Royal Commission puts it, psychopathy 'is a statistical abnormality that is to say, psychopath differs from a normal person only quantitatively or in degree, not qualitatively; and the diagnosis of psychopathic personality does not carry with it any explanation of the causes of the abnormality.'" Model Penal Code, Comments § 4.01 at 160 (Tentative Draft No. 4, 1956.)

*See also* Cleckley, *The Mask of Sanity* (Fourth Edition 1964); Cavanagh, *Problems of a Psychiatrist in Operating Under the M'Naghten, Durham and Model Penal Code Rules*, 45 Marquette Law Review 478 (1962); Symposium, *The Sociopathic Criminal Offender: What To Do With Him?* 34 University of Cincinnati Law Review 1 (1965).

 We are convinced that the legislature was influenced by the position of the American Law Institute concerning personality or character disorders. We conclude that the legislature did not mean to include such disorders as mitigating circumstances in determining the penalty for first-degree murder.

The burden of establishing mitigating circumstances is on the defendant. A.R.S. § 13–454(B). Because both of the defendant's expert witnesses characterized him as a sociopath the sentencing court was correct in finding the absence of the first mitigating circumstance. In our review we do not find evidence of the presence of any of the other statutorily prescribed mitigating circumstances.

If the superior court finds one or more of the aggravating circumstances and no mitigating circumstances, it shall impose the sentence of death. A.R.S. § 13–454(D). A similar statutory scheme was approved in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The superior court correctly applied the statute in the instant case.

Pursuant to A.R.S. § 13–1715 we have reviewed all of the rulings and the findings of the superior court on the convictions and sentence of the defendant. We find no reversible error.

Judgment of conviction and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

---

4. "Section 4.01. Mental Disease or Defect Excluding Responsibility.

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct." Model Penal Code, § 4.01 at 66 (Proposed Official Draft, 1962).