Willie Lee **RICHMOND**, Petitioner–Appellant,

v.

Samuel A. **LEWIS**,* Director, Arizona Department of Corrections; and Roger Crist, Superintendent of the Arizona State Prison, Respondents–Appellees.

No. 86–2382.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 18, 1987.

Submission Vacated Sept. 22, 1987.

Reargued and Submitted Sept. 27, 1990.

Decided Dec. 26, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 17, 1991.

As Amended Jan. 14, 1992.

---

* Samuel A. Lewis and Roger Crist have been substituted for their respective predecessors in office, James R. Ricketts and Donald Wawrzaszek, pursuant to Federal Rule of Appellate Procedure 43(c)(1).

Timothy K. Ford, MacDonald, Hoague & Bayless, Seattle, Wash., for petitioner-appellant.

Jack Roberts, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before ALARCON and O'SCANNLAIN, Circuit Judges, and STEPHENS,** District Judge.

## ORDER

The opinion reported at 921 F.2d 933 (9th Cir.1990) is hereby amended as follows: in the block quotation in the second column on page 943 of the opinion, twenty-two lines from the bottom of the page, delete the ellipsis and insert in lieu thereof: "In [*State v.*] *Gretzler,* [135 Ariz. 42, 659 P.2d 1 (1983)] *supra,* we discussed factors which lead to a finding of heinousness or depravity. One factor is the infliction of gratuitous violence on the victim; another related factor is the needless mutilation of the victim."

The final paragraph in Part IV–D on page 947 of the opinion is hereby amended to read as follows:

In this case, there is no similar doubt. Elimination of the challenged factor would still leave enough support for Richmond's sentence because the statute at issue here

is fundamentally different from the statute at issue in *Clemons* [*v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)]. The Mississippi law that *Clemons* considered authorizes the death penalty if " 'there are insufficient mitigating circumstances ... to *outweigh* the aggravating circumstances.' " *Id.* 110 S.Ct. at 1446 n. 2 (quoting Miss.Code Ann. § 99–19–101(3)(c) (Supp.1989)) (emphasis added). Arizona's law mandates the death penalty "if the court finds *one or more* of the [enumerated] aggravating circumstances ... *and* that there are no mitigating circumstances *sufficiently substantial to call for leniency.*" Ariz.Rev.Stat.Ann. § 13–703(E) (emphasis added). The difference is significant: a conclusion by the Arizona courts that there are no substantial mitigating circumstances is separate from and independent of any conclusion regarding the existence of aggravating circumstances. Invalidation of an aggravating circumstance does not mandate reweighing or require resentencing where the court has found that the prosecution has met its burden of establishing aggravation sufficient to warrant the state's harshest penalty *two or three times* and that the defense has failed to establish mitigating circumstances sufficiently substantial to call for leniency. *See id.* §§ 13–703(C), (E). Under the statute at issue in *Clemons,* the invalidation of an aggravating circumstance necessarily renders any evidence of mitigation "weightier" or more substantial in a relative sense; the same, however, cannot be said under the terms of the Arizona statute at issue here. Nothing in the Arizona statute suggests the need for plenary reweighing where the record still reveals that there are "one or more of the [enumerated] aggravating circumstances ... and that there are no mitigating circumstances sufficiently substantial to call for leniency." *Id.* § 13–703(E).

The panel has voted to deny the petition for rehearing. Judges Alarcon and O'Scannlain have voted to reject the sug-

** The Honorable Albert Lee Stephens, United States District Judge for the Central District of California, sitting by designation.

gestion for rehearing en banc and Judge Stephens so recommends.

On the request of a judge in regular active service, the suggestion for rehearing en banc was put to a vote of the full court, and the majority of the court voted to deny rehearing. Fed.R.App.P. 35(b). Judge Pregerson dissented from the denial of rehearing and was joined by Judges Hug, Norris and Reinhardt. The dissent is filed as an attachment to this order.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

O'SCANNLAIN, Circuit Judge:

Willie Lee Richmond, who was sentenced to death upon conviction of first-degree murder in Arizona state court, appeals from the district court's denial of his petition for habeas corpus. He contends that imposition of capital punishment will violate his rights under the sixth, eighth, and fourteenth amendments. We now affirm.

### I

#### A

This case arises from Richmond's conviction in 1974 for first-degree murder in the death of Bernard Crummett. On an August evening seventeen years ago, the victim met Rebecca Corella, a nude dancer, at the Bird Cage Bar in Tucson, Arizona. After leaving the bar, the pair met Richmond in the bar's parking lot where Corella attempted to persuade Richmond to allow his fifteen-year-old girlfriend, Faith Erwin, to prostitute herself with Crummett. Richmond and Erwin refused, and after a brief conversation, Corella agreed to have sex with Crummett herself. Crummett thereupon produced a twenty-dollar bill, which Corella handed to Richmond and which Richmond palmed and surreptitiously exchanged for a ten. A brief argument ensued as Richmond and Corella insisted that Crummett had only given them ten dollars.

Crummett eventually yielded and agreed to pay more. As he reached into his wallet a second time, Corella observed what seemed a considerable amount of cash, and she communicated her observation to Richmond. All four individuals then proceeded in a borrowed station wagon to Corella's motel-room apartment. There, just as Corella and Crummett emerged from the bedroom, Richmond whispered to Erwin his intention that they rob Crummett, explaining that they should not commit the crime in the apartment because Crummett might remember the surroundings.

The group then left the motel and with Richmond as their driver proceeded to the end of a road on the outskirts of Tucson. Richmond thereupon stopped the car, and either Richmond or Corella—the testimony conflicts—told Crummett to get out because the car had suffered a flat tire. Richmond then assaulted Crummett, beating him with his fists and knocking Crummett to the ground. As Crummett lay motionless, Richmond pelted him with rocks. Corella, meanwhile, grabbed Crummett's wallet. According to Erwin, who admitted that she was vomiting and "coming down" from heroin during the incident, the following events then transpired:

> Q. [Mr. Howard, Prosecutor]
> Then what happened?
> A. [Erwin]
> Well, they all got in the car, and Becky [Corella] was getting the wallet and what else, you know. I looked over to see what else was taken. And Becky [Corella] was getting the wallet and we came in the car and left.
> Q. And where did you go from there?
> A. Back to the Sands Motel.
> Q. Did you run over anything?
> A. Yes, a man. It was a bump, after we were leaving.
> Q. After you felt that bump, was anything said in the car when you felt that bump?
> A. Becky [Corella] said, it felt like a man's body.
> Q. Who was driving the car?
> A. Willy [sic].

Under cross-examination, Erwin stood by her contention that Richmond had been the

driver at the time the car ran over Crummett. She admitted, however, that she was suffering greatly under the influence of her drug injections at the time and that she was lying back on the car seat with her eyes closed.

The police found Crummett's body at five o'clock the following morning. The examining pathologist testified at trial that the body exhibited signs of three forms of extreme force. First, there were wounds and indentations in the head consistent with a contention that the victim had been pummeled with rocks. In conjunction with this observation, he noted that several blood-stained rocks were found in the immediate vicinity of the body. Second, he testified that the victim's head had suffered severe trauma and "bursting" from a crush injury most probably attributable to an automobile tire. He identified this second injury as the probable cause of death. Third, he testified to the presence of a second crush injury along the trunk and the abdominal section. This too the pathologist attributed to an automobile tire, which impacted the body from the opposite direction at least thirty seconds after the fatal blow. He concluded, therefore, that the victim was twice run over—once while alive but presumably unconscious and a second time after death. A police detective also testified to the discovery of human blood and hair on the undercarriage of the recovered station wagon.

Shortly after the night of Crummett's death, Richmond was arrested on two unrelated murder charges. As he awaited proceedings on those charges in jail, he was served with an arrest warrant for the murder of Crummett, and he agreed to waive his rights and make a statement at that time. Although he admitted to robbing and beating Crummett, he claimed that he was not the driver when Crummett was run over. In his statement, which was taped and played at trial, Richmond insisted:

I opened the door. I snatched the dude out by his collar, and bam, he falls straight out. I wanted to go through his pockets, but she [Corella] was already going through his pockets and he was getting up and I reached down and punched him again. So my old lady, Faith [Erwin], she couldn't take it. She got out of the car and she looked and she started crying, you know. And about that time I am looking at her, and going through his change. And this rock, you know, like that, and dip, dip like that, you know. And I said, wow, to myself, you know. Come on let's get in the car and me and her [Erwin] get in the car, and I am talking to her [Erwin] and Rebecca [Corella] gets in the car and she backed up and she throws up in gear and comes back over. And we were going on down further and she was all over the fucking road, and said, give me this mother-fucking car and let me drive, you know.

At the conclusion of the evidentiary phase of the trial, the judge instructed the jury that Richmond could be convicted of first-degree murder upon either a finding of premeditation or a felony-murder theory:

Murder is the unlawful killing of a human being, with malice aforethought.

\* \* \* \* \* \*

The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the perpetration of, or attempt to perpetrate, the crime of robbery and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree.

\* \* \* \* \* \*

If a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of robbery, all person[s] who either directly and actively commit the act constituting such crime or who knowingly and with criminal intent aid and abet its commission or, whether present or not, who advise and encourage its commission, are guilty of murder in the first-degree, whether the killing is intentional, unintentional, or accidental.

Upon these and other instructions, the jury found Richmond guilty of first-degree mur-

der on February 5, 1974.[1]

**B**

After a separate hearing held before the trial judge alone, the court pronounced its sentence:

> The court rendered a special verdict finding the existence of two aggravating circumstances: 1) that the defendant was previously convicted of a felony involving the use or a threat of violence on other persons, and 2) that the defendant had committed the offense in an especially heinous and cruel manner. It found none of the statutory mitigating circumstances to be present. Based on its findings, the court sentenced the defendant to death.

*State v. Richmond*, 114 Ariz. 186, 189, 560 P.2d 41, 44, *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976).

Richmond petitioned in state court for post-conviction relief claiming the discovery of new exculpatory evidence. He presented an affidavit from Daniel McKinney, a former boyfriend of Corella, in which McKinney stated that Corella had admitted to being the driver when the car ran over Crummett. The state countered with a transcribed tape recording in which McKinney claimed that Richmond had threatened him in prison. The petition for relief was denied. On automatic appeal, the Arizona Supreme Court affirmed both the conviction and the sentence, holding inter alia that (1) Richmond's case was properly submitted on a theory of felony murder, (2) post-conviction relief was properly denied, and (3) the Arizona death penalty statute was constitutional, both as written and as applied. *See* 114 Ariz. at 190–98, 560 P.2d at 45–53.

After the United States Supreme Court denied certiorari on direct appeal, Richmond petitioned for a writ of habeas corpus in the federal district court of Arizona. He argued that the Arizona statute unconstitutionally deprived him of the opportunity to present non-statutory mitigating circumstances before the judge at sentencing. The district court upheld Richmond's conviction but ruled the Arizona statute unconstitutional under the eighth and fourteenth amendments for its failure to allow consideration of a convict's character. *Richmond v. Cardwell*, 450 F.Supp. 519 (D.Ariz.1978). The court therefore vacated Richmond's sentence.[2]

At a second sentencing hearing in March 1980, the state trial court again found no mitigating circumstances sufficient to warrant leniency, and it resentenced Richmond to death. Once again, on mandatory appeal, the Arizona Supreme Court affirmed the sentence. *State v. Richmond*, 136 Ariz. 312, 666 P.2d 57, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). Independently reviewing the record,[3] the state supreme court found that Richmond had actively participated in the robbery and had played an integral role in the events leading up to Crummett's death. Although it acknowledged that the force of Richmond's manual blows had not caused the death, the court held that circumstantial evidence supported Erwin's testimony that Richmond had been the lethal driver. It found that the sentence was appropriate under these conditions. Again on direct review, the United States Supreme Court denied certiorari. 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983).

Richmond then pursued a second writ of habeas corpus in federal court. After a brief hearing, the district court denied the

---

1. On August 9, 1974, Richmond was convicted of first-degree murder on one of the two unrelated charges and sentenced to life imprisonment. "It is not disputed that the killing that was the basis of th[at] conviction occurred prior to the murder of Bernard Crummett." *Richmond v. Ricketts*, 640 F.Supp. 767, 780 (D.Ariz. 1986). At the time of that earlier murder, "the death [penalty] had not yet become effective [in Arizona] so that the sentence of life imprisonment was the only possible sentence." *Id.*

Richmond was acquitted of the other murder. *See id.*

2. The Arizona death penalty statute was subsequently revised to cure this defect. *See* Ariz. Rev.Stat.Ann. § 13–703(G), *as amended by* 1979 Ariz.Sess.Laws ch. 144, § 1 (effective May 1, 1979).

3. *See infra* note 10.

writ and dismissed the petition. Four days later, a panel of this court stayed Richmond's execution and issued a certificate of probable cause to provide time for a full-fledged appeal. In due course, the court affirmed dismissal for failure to exhaust state remedies, but it remanded with instructions to allow amendment to permit the prosecution of any claims that had been properly exhausted.[4] *Richmond v. Ricketts*, 730 F.2d 1318 (9th Cir.1984). Following such amendment, the district court again denied Richmond's petition, and this court again reversed, remanding for a full review of the state record. *Richmond v. Ricketts*, 774 F.2d 957 (9th Cir.1985). After reviewing the full record, the district court denied Richmond's petition for the third time in a thirty-five page opinion. *Richmond v. Ricketts*, 640 F.Supp. 767 (D.Ariz.1986).

Richmond now appears before this court with the assistance of counsel to appeal this most recent denial order. This court originally entertained oral argument in his appeal on September 18, 1987, but deferred submission pending the en banc decision of this circuit in *Adamson v. Ricketts. See* No. 84–2069 (9th Cir. Aug. 14, 1987) (en banc) (order scheduling oral argument for Oct. 20, 1987, in light of *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)). *Adamson* presented a similar challenge to the constitutionality of Arizona's revised death penalty statute. A year later, in December 1988, the *Adamson* court ruled the Arizona statute unconstitutional. 865 F.2d 1011 (9th Cir.1988) (en banc). Arizona petitioned the Supreme Court of the United States for review of that decision, and this court further deferred submission pending that outcome.

In the meantime, on direct review from the state's highest court, the Supreme Court of the United States announced in *Walton v. Arizona* that the Arizona death penalty statute is *not* unconstitution-

al. — U.S. —, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *reh'g denied,* — U.S. —, 111 S.Ct. 14, 111 L.Ed.2d 828 (1990). In a companion case decided that same day, *Lewis v. Jeffers,* the Court restated and elaborated upon its *Walton* holding. — U.S. —, 110 S.Ct. 3092, 111 L.Ed.2d 606, *reh'g denied,* — U.S. —, 111 S.Ct. 14, 111 L.Ed.2d 829 (1990). On the following day, the Court denied certiorari in *Adamson. Lewis v. Adamson,* — U.S. —, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), *denying cert. to Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988) (en banc).

In light of these developments, this court ordered the parties to file supplemental briefs, and on September 27, 1990, the court entertained a second oral argument to consider the effects of *Walton, Jeffers,* and other recent Supreme Court decisions on this appeal. The court thereafter took the entire appeal under submission for decision.

## II

### A

The district court had proper jurisdiction under 28 U.S.C. § 2241. This court has proper jurisdiction under 28 U.S.C. § 2253. We review the denial of a habeas corpus petition de novo. *See Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). However, under 28 U.S.C. § 2254(d), the factual findings of state trial and appellate courts are presumed correct if fairly supported by the record. *See Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

### B

Richmond has presented four arguments: (1) that Arizona's death penalty law is unconstitutional both on its face and as applied, (2) that the trial court never specifically found that he caused, intended to

---

**4.** Under the "total exhaustion rule" announced by the Supreme Court in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a federal court cannot adjudicate a habeas petition if it contains any unexhausted claims—even if it also contains exhausted claims. The re-

mand order was intended to satisfy this rule. *See* 730 F.2d at 1318.

Upon amending his petition, Richmond continued to assert eighteen claims. *See* 774 F.2d at 959.

cause, or attempted to cause Crummett's death and that imposition of the death penalty would therefore violate the rule of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), (3) that he was improperly denied an evidentiary hearing on his claim that Arizona's administration of the death penalty is unconstitutionally discriminatory, and (4) that fulfillment of his sentence after so many years on death row would constitute cruel and unusual punishment. Respondent Arizona has challenged all four contentions and has further argued that Richmond's petition constitutes an abuse of the writ. We address the state's latter contention first and then address Richmond's arguments sequentially.

## III

■ In its 1978 judgment on Richmond's first petition for habeas relief, the district court vacated Richmond's sentence but affirmed his conviction. The State of Arizona argues that because Richmond failed to appeal the affirmance of his conviction at that time, it is abuse of the writ to challenge the conviction now. *See* 28 U.S.C. § 2244(b); Rules Governing Section 2254 Cases, Rule 9(b). A prior panel of this court has already addressed this contention. *See Richmond*, 774 F.2d at 959–61. We are bound to adopt its conclusions as the law of the case. *See Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir.1981); *see also* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], at 119 (2d ed. 1988) ("If there is an appeal from the judgment entered after remand, the decision on the first appeal establishes the law of the case to be followed on the second.").

Thus, to the extent that Richmond seeks to challenge his conviction on grounds that were available to him when he filed his first petition, we agree that he is barred from doing so now:

> The relief obtained on the first petition went only to the sentence. The incentive remained, therefore, for Richmond to appeal the rejection of his challenges to the *underlying conviction*, since if he were

to prevail on appeal on these claims, he could not be resentenced. The district court could properly decline to reconsider these underlying-conviction claims when raised in a second petition.

*Richmond*, 774 F.2d at 960 (emphasis in original). Whether termed abuse of the writ or res judicata, the reassertion of such claims is not permissible at this stage.

■ Richmond, however, has focused his attention in the current appeal on challenging the re-imposition of his sentence. This he certainly may do, and in so doing, he may challenge the death penalty on grounds that were available to him but that he did not raise when contesting his first sentence:

> Previously unadjudicated claims must be decided on the merits unless the petitioner has made a conscious decision deliberately to withhold them, is pursuing "needless piecemeal litigation," or has raised the claims only to "vex, harass, or delay." None of these three situations applies to Richmond's petition.

*Id.* at 961 (citing *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963)). Richmond may also renew challenges to the death penalty that were raised in his first petition and *decided against him* by the district court:

> [W]hen the district court enjoined Richmond's [initial] death sentence, it relied solely on the [original] Arizona statute's failure to consider mitigating factors of an individual's character. *Richmond v. Cardwell*, 450 F.Supp. at 526. Because Richmond had obtained the sentencing relief he sought, he had no incentive to appeal the adverse determination of his other grounds for challenging the death sentence, and perhaps would not have been permitted to do so on mootness or ripeness grounds. The ends of justice would not be served by denying Richmond appellate consideration of these other constitutional challenges to the death penalty merely because he obtained relief on a different ground.

*Id.* at 960. With respect to any of the proffered challenges to his sentence, there-

fore, "Richmond's petition does not constitute an abuse of the writ." *Id.* at 961.

## IV

### A

At the time of Richmond's conviction in 1974, Arizona law defined first-degree murder in relevant part as follows: "A murder which is perpetrated by ... any ... kind of wilful, deliberate and premeditated killing, or which is committed ... in the perpetration of, or attempt to perpetrate ... robbery ... is murder of the first degree." Ariz.Rev.Stat.Ann. § 13–452 (repealed 1978) (current version at § 13–1105). For those convicted of first-degree murder, the Arizona code provides a sentencing hearing independent of the trial. § 13–703(B). Here, the trial judge must choose without the assistance of a jury between the options of life imprisonment and capital punishment. § 13–703(A)–(B). For purposes of this determination, a special verdict is required regarding the existence or nonexistence of any aggravating or mitigating factors. § 13–703(D). The statute puts the burden of establishing the existence of any aggravating factors on the prosecution and the burden of establishing the existence of any mitigating factors on the defense. § 13–703(C). The statute then channels the court's discretion:

> [T]he court ... shall impose a sentence of death if the court finds *one or more* of the aggravating circumstances enumerated in subsection F of this section and that there are no mitigating circumstances sufficiently substantial to call for leniency.

§ 13–703(E) (emphasis added).

Subsection F enumerates ten aggravating circumstances, including the following three:

> (1) The defendant was previously convicted of a felony in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.
>
> (2) The defendant was previously convicted of a felony in the United States

involving the use or threat of violence on another person.

\* \* \* \* \* \*

> (6) The defendant committed the offense in an especially heinous, cruel or depraved manner.

§ 13–703(F). By the time of Richmond's resentencing in 1980, subsection G of the statute had been revised to read as follows:

> Mitigating circumstances shall be any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any circumstances of the offense, including but not limited to [ (1) the defendant's incapacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, (2) the defendant's suffering of unusual or substantial duress, (3) the defendant's relatively minor participation in the crime, (4) the defendant's reasonable inability to foresee that his conduct would cause or would create the grave risk of causing death, and (5) the defendant's age].

§ 13–703(G).

### B

Richmond challenges the constitutionality of this revised sentencing scheme on four grounds. First, he contends that judicial determination of the existence or nonexistence of aggravating circumstances impermissibly usurps the jury's fact-finding function. Second, he claims that requiring the defense to establish the existence of any mitigating circumstances illegitimately shifts the burden of proof. Third, he argues that the Arizona statute creates an unconstitutional presumption that death is the proper sentence. Finally, he insists that imposing the death penalty upon finding that the killing was "especially heinous, cruel or depraved" is unconstitutionally vague.

▮The Supreme Court's recent decision in *Walton v. Arizona* specifically addressed and rejected the first three conten-

tions, and Richmond has not forcefully advanced these arguments since.[5] With respect to the judicial determination of sentencing factors, the Court stated: " 'Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court.' " *Walton,* 110 S.Ct. at 3054 (quoting *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990)). Indeed, even before *Walton,* it was well settled that " 'the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.' " *Id.* (quoting *Hildwin v. Florida,* 490 U.S. 638, 640, 109 S.Ct. 2055, 2057, 104 L.Ed.2d 728 (1989)); *see generally id.* 110 S.Ct. at 3054–55 (Part II of the opinion). As the district court noted when it rejected this argument in Richmond's first petition:

"[The Supreme Court] has never suggested that jury sentencing is constitutionally required. And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases."

*Richmond,* 450 F.Supp. at 523 (quoting *Proffitt v. Florida,* 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976)).[6]

■ The *Walton* Court likewise rejected the contention that requiring the defendant to establish the existence of mitigating factors impermissibly shifts the burden of proof. Denying that the practice violates the eighth and fourteenth amendments, the Court ruled:

So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

*Walton,* 110 S.Ct. at 3055; *see generally id.* at 3055–56 (Part III of the opinion).

Finally, the *Walton* Court also rejected the claim that the Arizona statute creates an impermissible presumption that death is the proper sentence for first-degree murder. Like Richmond, Walton had challenged the statute's directive that a court *"shall* impose a sentence of death" if it finds one or more aggravating circumstances and no substantial mitigating circumstances. Ariz.Rev.Stat.Ann. § 13–703(E) (emphasis added). Walton had contended, as Richmond does here, that this provision violates the proscription against mandatory death sentences announced in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). The Court disagreed, citing its recent decisions in *Blystone v. Pennsylvania,* 494 U.S. 299,

---

**5.** We have already had occasion to note *Walton*'s rejection of the first and third contentions. *See Smith v. McCormick,* 914 F.2d 1153, 1169–70 (9th Cir.1990). We also note in passing that Richmond's able and experienced counsel, Timothy K. Ford, is intimately familiar with the *Walton* case. Mr. Ford represented Jeffrey Alan Walton in his petition before the United States Supreme Court. This fact—in addition to the cases' underlying similarity—may help to explain why several of the arguments raised here are identical to arguments decided by the Court in that case. *See infra* note 7 (noting the factual similarities between the two cases).

**6.** Since the *Walton* decision, Richmond has apparently conceded that the sixth amendment does not require jury factfinding at the sentencing phase in capital punishment cases, but he

has stressed the alternative argument that the equal protection clause *does* require jury factfinding at sentencing. Because Arizona law provides for jury factfinding in many similar circumstances, Richmond contends, it is arbitrary and irrational not to provide for it here. We find this argument unpersuasive. As the Supreme Court noted in *Proffitt,* there is indeed a rational reason for committing the factfinding function to the judge at the sentencing phase in capital punishment cases, and it probably promotes more evenhanded justice to do so. *See Proffitt,* 428 U.S. at 252, 96 S.Ct. at 2966. Moreover, the Court's sixth amendment holding on this issue in *Walton* would make little sense if the broader, less specific terms of the equal protection clause could be read to require the opposite result.

110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316, *reh'g denied,* —— U.S. ——, 110 S.Ct. 1961, 109 L.Ed.2d 322 (1990), both of which had upheld similarly worded capital punishment laws. The Court ruled that so long as the statute provides individualized sentencing and does not automatically impose death for certain categories of murder, it passes constitutional muster under *Woodson. See generally Walton,* 110 S.Ct. at 3056 (Part IV of the opinion).

In short, the Supreme Court has specifically rejected three of the constitutional arguments raised here, and it has done so in the context of reviewing the very same statute.

### C

Richmond insists, however, that his fourth constitutional challenge to the statute survives *Walton.* Indeed, he contends that *Walton* itself renders his death sentence unconstitutional and that this court's en banc decision in *Adamson v. Ricketts* mandates resentencing. *See Adamson,*

865 F.2d 1011 (9th Cir.1988) (en banc), *cert. denied sub nom. Lewis v. Adamson,* —— U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). We are not persuaded.

In *Walton,* another Arizona inmate who was convicted of first-degree murder and sentenced to death challenged his sentence on constitutional grounds.[7] The Supreme Court denied all four of his claims and affirmed the sentence. Despite this result, Richmond contends that Walton's fourth claim and the Court's disposition of that claim bolster his petition.[8]

■ In his fourth claim, Walton alleged that the aggravating circumstance found and relied upon by the sentencing judge— his commission of the crime "in an especially heinous, cruel or depraved manner"—was unconstitutionally vague. Ariz. Rev.Stat.Ann. § 13–703(F)(6); *see* 110 S.Ct. at 3056–57. The Supreme Court agreed that the relevant statutory provision was vague but did not agree that it was unconstitutional. In essence, the Court held that facial vagueness alone does not decide the question: one must look beyond the language of the suspect provision and consider the full circumstances attending its ap-

---

7. The facts of the *Walton* case are strikingly similar in many respects to the facts of the present case. Walton, who also acted with the assistance of two friends, "went to a bar in Tucson, Arizona, ... intending to find and rob someone at random, steal his car, tie him up, and leave him in the desert.... In the bar's parking lot, the trio encountered Thomas Powell, a young, off-duty Marine." 110 S.Ct. at 3052. Forcing Powell to accompany them, the three commandeered his car and drove to a remote area on the outskirts of town. When they stopped, they

> forced Powell out of the car and had him lie face down on the ground near the car while they debated what to do with him.... Walton then took a .22 caliber derringer and marched Powell off into the desert. After walking a short distance, Walton forced Powell to lie down on the ground, placed his foot on Powell's neck, and shot Powell once in the head. Walton later told [his two accompanying friends] that he had shot Powell and that he had "never seen a man pee in his pants before."

*Id.* Despite the similarities, the circumstances of Powell's death were somewhat more gruesome than those of Crummett's:

> Powell's body was found approximately a week later.... A medical examiner determined that Powell had been blinded and ren-

dered unconscious by the shot but was not immediately killed. Instead, Powell regained consciousness, apparently floundered about in the desert, and ultimately died from dehydration, starvation, and pneumonia approximately a day before his body was found.

*Id.*

8. Walton's first three claims, which were also raised by Richmond, were the three claims discussed in Part IV–B above. First, Walton alleged that "every finding of fact underlying the sentencing decision must be made by a jury, not by a judge." 110 S.Ct. at 3054; *compare* Ariz. Rev.Stat.Ann. § 13–703(B). Second, he alleged that the Arizona statute unconstitutionally "imposes on defendants the burden of establishing, by a preponderance of the evidence, the existence of mitigating circumstances." 110 S.Ct. at 3055; *compare* Ariz.Rev.Stat.Ann. § 13–703(C). Third, he alleged that the Arizona statute "creates an unconstitutional presumption that death is the proper sentence" because it *requires* the death penalty "if one or more aggravating circumstances are found and mitigating circumstances are held insufficient to call for leniency." 110 S.Ct. at 3056; *compare* Ariz.Rev.Stat. Ann. § 13–703(E). The Supreme Court rejected all three of these claims as well as the fourth, which is discussed herein.

plication. Safeguards built into the sentencing scheme through other provisions—and even extra-statutory procedural safeguards—may preserve the scheme's constitutional integrity. *See generally Walton,* 110 S.Ct. at 3056–58 (Part V of the opinion).

The Court found three such safeguards within Arizona law. First, the Arizona scheme provides for sentencing by a judge, not by a jury. That fact alone distinguished *Walton* from *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), two cases relied upon by Walton in which the Supreme Court had invalidated death sentences due to similarly vague statutory definitions of aggravating circumstances. Where a judge makes the sentencing findings there is less danger of impermissibly broad applications of statutory terms: "Trial judges are presumed to know the law and to apply it [correctly] in making their decisions." *Walton,* 110 S.Ct. at 3057.

Second, the Court found, the Arizona Supreme Court had effectively salvaged the suspect provision by affording it a "limiting definition" in the course of reviewing the trial judge's sentencing decision. What the state legislature had improvidently left out, the state supreme court properly inserted:

> The Arizona Supreme Court stated that "a crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death," and that "[m]ental anguish includes a victim's uncertainty as to his ultimate fate." ...
>
> \*   \*   \*   \*   \*   \*
>
> Recognizing that the proper degree of definition of an aggravating factor is not susceptible of mathematical precision, we conclude that the definition given to the "especially cruel" provision *by the Arizona Supreme Court* is constitutionally sufficient because it gives meaningful guidance to the sentencer.

*Id.* at 3057–58 (quoting *State v. Walton,* 159 Ariz. 571, 586, 769 P.2d 1017, 1032

(1989)) (emphasis added). By injecting this limiting definition into a sentencing process already restricted to judges, Arizona provided ample protection for Walton's constitutional rights.

> If the Arizona Supreme Court has narrowed the definition of the "especially heinous, cruel or depraved" aggravating circumstance, we presume that Arizona trial judges are applying the narrower definition. It is *irrelevant* that the statute itself may not narrow the construction of the factor.

*Id.* at 3057 (emphasis added).

Third, the Court reasoned:

> [E]ven if a trial judge fails to apply the narrowing construction or applies an improper construction, the Constitution does not necessarily require that a state appellate court vacate a death sentence based on that factor. Rather, as we held in *Clemons v. Mississippi,* 494 U.S. [738], 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), a state appellate court may itself determine whether the evidence supports the existence of the aggravating circumstance as properly defined or the court may eliminate consideration of the factor altogether and determine whether any remaining aggravating circumstances are sufficient to warrant the death penalty.

*Id.*

In his reliance on *Walton,* Richmond points out as an initial matter that the same aggravating circumstance at issue in that case was cited by the Arizona Supreme Court in its review of his death sentence. Richmond insists that the terms of this aggravating circumstance—"especially heinous, cruel or depraved"—are facially vague. He is undeniably correct; *Walton* held so explicitly. Richmond then argues, however, that whereas the Arizona Supreme Court cured this potential defect in *Walton,* it failed to do so in his case. The court, he maintains, applied no comparable "limiting construction" in its review of his sentence. This contention is empirically incorrect.

In reviewing Richmond's sentence, the Arizona Supreme Court quite clearly *did*

provide a limiting construction for the admittedly vague aggravating circumstance. In fact, if anything, the state court provided a more narrowly tailored and more obviously sufficient limiting construction in Richmond's case than it did in Walton's:

"Cruel" has been defined as "disposed to inflict pain especially in a wanton, insensate or vindictive manner: sadistic." *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Cruelty involves the victim's pain or suffering before death. *State v. Gretzler*, [135 Ariz. 42, 659 P.2d 1 (1983) ]; *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982); *State v. Lujan*, 124 Ariz. 365, 604 P.2d 629 (1979). The offense must be committed in an *especially* cruel, heinous or depraved manner to be considered an aggravating circumstance. *State v. Lujan, supra*. ...

"Heinous" has been defined as "hatefully or shockingly evil; grossly bad," and "depraved" is "marked by debasement, corruption, perversion or deterioration." *State v. Knapp, supra*. Heinous and depraved involve the mental state and attitude of the offender as reflected in his words and actions. *State v. Gretzler, supra; State v. Poland, supra; State v. Lujan, supra*. In *Gretzler, supra*, we discussed factors which lead to a finding of heinousness or depravity. One factor is the infliction of gratuitous violence on the victim; another related factor is the needless mutilation of the

victim. Here the victim was already unconscious and bleeding when he was run over not once, but twice, each time from a different direction. The evidence indicates that the first run by the vehicle was over the victim's head crushing his skull and killing him. The second run of the vehicle was over the body of the victim. The investigating officers found, at the location of the murder, two large pools of blood separated by about 30 feet, which was consistent with the body having been run over and dragged to where it was found. ...

... We believe the facts of this case set it "apart from the normal first degree murders." *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979).

*Richmond*, 136 Ariz. 312, 319, 666 P.2d 57, 64 (plurality opinion) (finding Crummett's killing especially heinous and depraved but not especially cruel); [9] *compare id. with Walton*, 159 Ariz. at 586–88, 769 P.2d at 1032–34.

As in *Walton*, the sentence in this case was (a) imposed by a trial judge presumably knowledgeable in the law, (b) thoroughly and independently reviewed by the Arizona Supreme Court, and (c) reimposed under a sufficiently limiting construction.[10] Under a fair reading of *Walton* and the record alone, therefore, Richmond's contentions must fail.

Richmond attempts to avoid this conclusion by challenging the legal accuracy of the Arizona Supreme Court's limiting con-

---

9. Richmond argues that only two of the five Justices of the Arizona Supreme Court concurred in this portion of the court's opinion. He is correct. Two other Justices voted to affirm the sentence but on other grounds. They explicitly rejected the argument that the killing had been especially heinous and depraved. *See Richmond*, 136 Ariz. at 322–24, 666 P.2d at 67–69 (Cameron, J., concurring and Gordon, V.C.J., joining). The fifth Justice dissented altogether. *See* 136 Ariz. at 324–26, 666 P.2d at 69–71 (Feldman, J., dissenting). The fact that a majority of the court did not concur in this finding, however, does not deny that the Justices who did concur in it provided an adequate limiting construction. The relevant point is that members of the court who premised their votes on the challenged factor undertook the deliberations and analysis constitutionally required.

More importantly, Richmond's observation is irrelevant in light of the fact that *four* Justices concurred in the finding of two other aggravating circumstances, either one of which could constitutionally have justified imposition of the death penalty. *See infra* Part IV–D.

10. *See Richmond*, 136 Ariz. at 317, 666 P.2d at 62 ("[I]n each case where the death penalty is imposed, this court conducts an independent review of the record to assure a just result. We have reviewed the record in the instant case ..."); 136 Ariz. at 320, 666 P.2d at 65 ("In death penalty cases, this court will conduct an independent examination of the record to determine for ourselves the presence or absence of aggravating and mitigating circumstances and the weight to give to each. We also independently determine the propriety of the sentence.").

struction. He cites several state court decisions, most notably *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), for the proposition that the court applied a definition of the aggravating circumstance that is untenable under Arizona law. This court, however, is foreclosed from engaging in any such inquiry. A federal appellate court cannot challenge the Arizona Supreme Court on matters of Arizona law; in that realm, the authority of the state court remains supreme.

Both *Walton* and its companion case, *Lewis v. Jeffers*, —— U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), support this analysis. As *Walton* pointed out, the relevant focus for this court's attention is not upon the language of the Arizona statute per se or even upon the sentencing decision of the state trial judge; rather, it is upon the constitutional legitimacy of Richmond's sentence as that sentence stands *today* after review by and exhaustion of the state court process. *See Walton*, 110 S.Ct. at 3057–58. The only question for this court is whether the *final* state result violates constitutional law so as to warrant granting a writ of habeas corpus. *Walton* requires this court to pay due deference to state judicial systems in the administration of their own criminal sanctions and to recognize both the competence and duty of state courts of general jurisdiction to enforce federal constitutional law.

*Jeffers* thoroughly reinforces the *Walton* rule. In *Jeffers*, the Supreme Court restated and reapplied the *Walton* holding to deny another Arizona prisoner's challenge to the legitimacy of his death sentence. Because *Jeffers* was before the Court on collateral review, the Court concluded that even greater deference was owed to the state system than the Court had urged in *Walton*, which it had heard on direct review. The Court never reached the merits of Jeffers's constitutional claims, and it certainly never approached any questions of state law; rather, the Court reached its decision upon formulation of the appropriate standard of review. Writing for the Court, Justice O'Connor explained:

> [R]espect for a state court's findings of fact and application of its own law coun-

sels against the sort of *de novo* review undertaken by the Court of Appeals in this case.... Where the issue is solely whether a state court has properly found existence of a constitutionally narrowed aggravating circumstance, we have never required federal courts "to peer majestically over the [state] court's shoulder so that [they] might second-guess its interpretation of facts that quite reasonably—perhaps even quite plainly—fit within the statutory language." ...

> Rather, in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We held in *Jackson* that where a federal habeas corpus claimant alleges that his state conviction is unsupported by the evidence, federal courts must determine ... "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jeffers*, 110 S.Ct. at 3102–03 (quoting *Godfrey v. Georgia*, 446 U.S. 420, 450, 100 S.Ct. 1759, 1776, 64 L.Ed.2d 398 (1980) (White, J., dissenting) and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979)) (emphasis in original).

In short, this court's focus must not be on the underlying sentence but on whether the *state system* in both imposing and reviewing that sentence committed an *independent* constitutional violation. To vacate Richmond's sentence, this court would have to find that there is no rational basis in law or fact for the state supreme court's final evaluation that the circumstances warrant the sentence of death:

> [A] federal court should adhere to the *Jackson* standard even when reviewing the decision of a state appellate court

that has independently reviewed the evidence, for the underlying question remains the same: if a State's aggravating circumstances adequately perform their constitutional function, then the state court's application of those circumstances raises, apart from due process and eighth amendment concerns, only a question of the proper application of state law. A state court's finding of an aggravating circumstance in a particular case—*including a de novo finding by an appellate court that a particular offense "is especially heinous ... or depraved"*—is arbitrary or capricious if and only if no reasonable sentencer could have so concluded.

*Id.* 110 S.Ct. at 3103 (emphasis added).

We therefore reject Richmond's invitation to "conduct[ ] a *de novo,* case-by-case comparison of the facts" of various state court precedents. *Id.* at 3101. Like the Supreme Court in *Walton,* we "conclude that the definition given to the 'especially cruel' provision by the Arizona Supreme Court is constitutionally sufficient." *Walton,* 110 S.Ct. at 3058. Applying *Jeffers,* we further conclude that under that definition a rational factfinder could indeed have found Crummett's murder heinous or depraved so as to warrant the penalty of death.

### D

Even if Richmond were to prevail in his claim that the Arizona Supreme Court failed to provide a sufficiently limiting construction for the aggravating circumstance discussed above, however, his contentions would still lack merit. The Arizona Supreme Court rested its affirmance of his sentence upon a finding of not one, but three aggravating circumstances and an insufficient showing of mitigating circumstances. *See Richmond,* 136 Ariz. at 318–21, 666 P.2d at 63–66. The second aggravating factor relied upon was Richmond's conviction for another murder six months after his initial conviction. Although this latter conviction postdated Richmond's first, "[i]t is not disputed that the killing that was the basis of th[at] conviction occurred prior to the murder of Bernard Crummett." *Richmond,* 640 F.Supp. at 780; *see supra* note 1. In any event, both convictions were duly on record by the time of Richmond's resentencing in 1980.

Furthermore, although the state supreme court explicitly found and addressed only these two aggravating circumstances, it held that "[t]he trial court correctly found three aggravating circumstances." *Richmond,* 136 Ariz. at 320, 666 P.2d at 65. The third was an entirely separate prior conviction for kidnapping—statutorily relevant for death penalty purposes as an offense "involving the use or threat of violence on another person." Ariz.Rev.Stat. Ann. § 13–703(F)(2).[11] Arizona law explicitly provides that a single aggravating circumstance may suffice for imposition of the death penalty. *See* § 13–703(E).

Richmond does not contend, nor could he reasonably, that the statutory definitions of these two other factors are unconstitutionally vague. *See* § 13–703(F)(1)–(2). Rather, he sidesteps consideration of these additional factors by citing this circuit's en banc decision in *Adamson v. Ricketts* for the proposition that invalidation of any one aggravating circumstance requires resentencing. *See* 865 F.2d at 1037 n. 42, 1038, 1039. We have just held that the aggravating circumstance to which

---

**11.** The court also hinted at the possible applicability of a fourth aggravating circumstance: the defendant's commission of the crime in expectation of pecuniary gain. *See* Ariz.Rev.Stat.Ann. § 13–703(F)(5); *Richmond,* 136 Ariz. at 320, 666 P.2d at 65. Although noting that the trial court had improperly analyzed this factor in reaching the conclusion that it did not apply, the Arizona Supreme Court declined to determine whether under a proper analysis it would apply.

With respect to consideration of Richmond's kidnapping conviction, the Arizona Supreme Court's majority opinion does not address it except to express general agreement with the trial court's reliance upon it. The concurrence, which was endorsed by two Justices, is somewhat more explicit in its embrace of the lower court's reliance on both the prior murder conviction *and* the prior kidnapping conviction. *See Richmond,* 136 Ariz. at 323–24, 666 P.2d at 68–69 (Cameron, J., concurring and Gordon, V.C.J., joining).

Richmond refers is *not* invalid, but assuming for the sake of argument that it is, Richmond's reliance on *Adamson* is not well taken.

The Supreme Court granted certiorari in *Walton* specifically *because of* this circuit's en banc holding in *Adamson*,[12] and *Walton* reached the opposite conclusion regarding the Arizona statute's constitutionality. Even if the portion of *Adamson* upon which Richmond relies survives *Walton*, it still does not support his claim. Contrary to the suggestion, *Adamson* did not hold that invalidation of one aggravating circumstance automatically requires remand for resentencing; rather, the court simply noted that it is the common practice of the Arizona Supreme Court to remand for resentencing when *that court* invalidates an aggravating circumstance. *Id.* There is no suggestion in *Adamson* that the United States Constitution requires remand when one aggravating factor is eliminated from the analysis if sufficient other aggravating factors remain.

The Supreme Court's recent decision in *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), upon which Richmond also relies, is not to the contrary. In *Clemons*, a Mississippi inmate challenged the constitutionality of a death sentence imposed partially on the basis of a court's finding that it had been an "especially heinous, atrocious or cruel" killing. *Id.* 110 S.Ct. at 1445. The Mississippi law in question permitted imposition of the death penalty upon a finding of only one aggravating circumstance so long as that aggravating circumstance outweighed all mitigating circumstances. Finding the state supreme court's consideration of the "especially heinous" factor impermissibly vague, the Supreme Court remanded for resentencing.

The Court did not hold, however, that imposition of the death penalty on the basis of the single remaining aggravating factor would have been ipso facto unconstitutional. Rather, it implicitly recognized that reliance on a single aggravating factor *can* be constitutional. *See id.* at 1446, 1450–51. The Court remanded because once the vague factor was removed from the analysis, it was unclear from the Mississippi Supreme Court's opinion whether the one remaining circumstance still outweighed all the mitigating evidence. *See id.* at 1449–51 (Parts III–IV of the opinion).

■ In this case, there is no similar doubt. Elimination of the challenged factor would still leave enough support for Richmond's sentence because the statute at issue here is fundamentally different from the statute at issue in *Clemons*. The Mississippi law that *Clemons* considered authorizes the death penalty if " 'there are insufficient mitigating circumstances ... to *outweigh* the aggravating circumstances.' " *Id.* at 1446 n. 2 (quoting Miss. Code Ann. § 99–19–101(3)(c) (Supp.1989)) (emphasis added). Arizona's law mandates the death penalty "if the court finds *one or more* of the [enumerated] aggravating circumstances ... *and* that there are no mitigating circumstances *sufficiently substantial to call for leniency.*" Ariz.Rev.Stat. Ann. § 13–703(E) (emphasis added). The difference is significant: a conclusion by the Arizona courts that there are no substantial mitigating circumstances is separate from and independent of any conclusion regarding the existence of aggravating circumstances. Invalidation of an aggravating circumstance does not mandate reweighing or require resentencing where the court has found that the prosecution has met its burden of establishing aggravation sufficient to warrant the state's harshest penalty *two or three times* and that the defense has failed to establish mitigating circumstances sufficiently substantial to call for leniency. *See id.* §§ 13–703(C), (E). Under the statute at issue in *Clemons*, the invalidation of an aggravating circumstance necessarily renders any evidence of

12. *See Walton*, 110 S.Ct. at 3054 ("Because the United States Court of Appeals for the Ninth Circuit has held the Arizona death penalty statute to be unconstitutional for the reasons submitted by Walton in this case, *see Adamson v.* *Ricketts*, 865 F.2d 1011 (1988) (en banc), we granted certiorari."); *id.* 110 S.Ct. at 3059 (Scalia, J., concurring) (describing *Adamson* and *Walton* as "essentially identical" cases).

mitigation "weightier" or more substantial in a relative sense; the same, however, cannot be said under the terms of the Arizona statute at issue here. Nothing in the Arizona statute suggests the need for plenary reweighing where the record still reveals that there are "one or more of the [enumerated] aggravating circumstances ... and that there are no mitigating circumstances sufficiently substantial to call for leniency." *Id.* § 13–703(E).

## V

■ Richmond next contends that because the trial court never specifically found that he caused, intended to cause, or attempted to cause Crummett's death, imposition of the death penalty would violate the rule of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The defendant in *Enmund* had been convicted of felony murder and sentenced to death for his involvement in the killing of two robbery victims, even though the record only suggested that he was the driver of the get-away car. In vacating Enmund's sentence, the Supreme Court held that imposition of the death penalty violates the eighth and fourteenth amendments in the absence of a specific finding by the trier of fact that the defendant actually killed, attempted to kill, intended to kill, or contemplated that life would be taken:

> Enmund himself did not kill or attempt to kill; and, as construed by the Florida Supreme Court, the record before us does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. Yet under Florida law death was an authorized penalty because Enmund aided and abetted a robbery in the course of which murder was committed.

*Id.* at 798, 102 S.Ct. at 3377; *see id.* at 801, 102 S.Ct. at 3378.

*Enmund,* however, is clearly distinguishable from the present case. The jury that convicted Richmond received instructions on both premeditated and felony murder, and the record before us clearly provides sufficient evidence for a finding that Richmond expressly intended to participate in and to facilitate that murder. Moreover, the Supreme Court's holding in *Enmund* was predicated upon the attenuated nature of the defendant's responsibility for the deaths in that case. As the Supreme Court pointed out more recently in *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127, *reh'g denied,* 482 U.S. 921, 107 S.Ct. 3201, 96 L.Ed.2d 688 (1987), *Enmund* does not stand for the blanket proposition that capital punishment is unconstitutional in cases of felony murder:

> [S]ome nonintentional murderers may be among the most dangerous and inhumane of all—the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property. This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an "intent to kill." ... [W]e hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ... [W]e simply hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement.

481 U.S. at 157–58, 107 S.Ct. at 1687–88 (footnote omitted).

Furthermore, in its independent review of the record in this case, the Arizona Supreme Court explicitly did consider *Enmund,* and it set forth findings sufficient to satisfy both that test and the Supreme Court's later pronouncements in *Tison:*

> Even if we accept appellant's contention that he was not driving the car when the victim was run over, we do not be-

lieve this case falls within the parameters of *Enmund*. The facts from the appellant's version indicate that he was the leader of the group; he was the first to use violent force on the victim; he was aware that the victim, if allowed to live, could identify him. Appellant, from his version of the facts, was willing to leave the wounded and unconscious victim alone in the desert to an uncertain fate.... There is no evidence that appellant protested or showed any emotion when the victim was twice run over. The appellant's version of the facts indicates appellant played an integral part in the events which caused the victim's death, and he willingly assisted in the acts which were intended to cause the victim's death.

The evidence presented by the state was that the appellant drove the vehicle over the victim, thus killing him. The testimony of Faith Erwin was that the appellant was the driver at the time the victim was run over. The circumstantial evidence supports Faith's testimony.

*Richmond*, 136 Ariz. at 318, 666 P.2d at 63.[13]

Nor does it matter that the *Enmund* finding was made by the state supreme court rather than by the original sentencing court:

At what precise point in its criminal process a State chooses to make the *Enmund* determination is of little concern from the standpoint of the Constitution....

... [W]hen a federal habeas court reviews a claim that the death penalty has been imposed on one who has neither killed, attempted to kill, nor intended that a killing take place or lethal force be used, the court's inquiry cannot be limited to an examination of jury instructions. Rather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to

the defendant's culpability has been made.

*Cabana v. Bullock*, 474 U.S. 376, 386–87, 106 S.Ct. 689, 696–97, 88 L.Ed.2d 704 (1986) (footnote omitted). Accordingly, we conclude that the Arizona courts have predicated Richmond's sentence upon a sufficient finding of criminal intent.

## VI

■ As a black male of moderate means, Richmond next contends that the district court erred in denying his request for an evidentiary hearing upon his claim that Arizona's administration of the death penalty is racially, sexually, and socio-economically discriminatory. We disagree. A habeas corpus petitioner is entitled to an evidentiary hearing both if he "alleges facts which, if proved, would entitle him to relief" and if he did not receive a full and fair evidentiary hearing on the issue in the state court. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *see id.* at 312–19, 83 S.Ct. at 756–60. The facts that Richmond has alleged, even if proven, would not entitle him to relief.

In support of his request for a hearing on this issue in the district court, Richmond made an extensive proffer of what he seeks to prove:

The proffer included that, although 15% of the victims of homicides in Arizona since 1973 have been black, every person under death sentence was convicted of killing a white victim; that [although] approximately 10% of the persons convicted of homicide in Arizona since 1973 have been women, no women are on death row. All three experts who had examined the Arizona death sentencing process from 1973 to the present [March 1987] found significant discrepancies based on the victim's race; two found evidence of discrimination based on the defendant's race, and one demonstrated significant disparities based on sex and economic status as well.

---

**13.** Interestingly, the Arizona Supreme Court conducted its *Enmund* analysis in this case before the United States Supreme Court narrowed the *Enmund* holding in *Tison*. The United States Supreme Court decided *Enmund* in 1982; the Arizona Supreme Court affirmed Richmond's sentence in 1983; and the United States Supreme Court decided *Tison* in 1987.

Brief for Appellant at 38–39 (citations omitted). This proffered evidence, however, is precisely the sort of generalized statistical evidence that was rejected as unactionable by the Supreme Court in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262, *reh'g denied*, 482 U.S. 920, 107 S.Ct. 3199, 96 L.Ed.2d 686 (1987). Even if proven, the statistical disparities to which Richmond points would be insufficient to support an inference of purposeful discrimination in his own case. To require the district court to weigh this evidence would be to suggest that Richmond's death sentence could conceivably be invalidated solely on the basis of his physical or social affinity to other defendants who are not now before this court but who may have suffered unconstitutional discrimination in their receipt of the same sentence. This we cannot do. To prevail in challenging his sentence under the equal protection clause, Richmond "must prove that the decision-makers in *his* case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 292, 107 S.Ct. at 1767 (emphasis in original). Richmond has alleged no facts to suggest that either the Arizona Supreme Court, the state trial court, or the prosecutor's office acted with prejudicial or discriminatory purpose in either seeking or imposing his sentence. The district court thus properly denied his request for an evidentiary hearing on this issue. *See generally id.* at 292–320, 107 S.Ct. at 1766–82.

### VII

■ Richmond's final contention is that fulfillment of his sentence after sixteen years on death row would constitute cruel and unusual punishment in violation of the eighth and fourteenth amendments.[14] We know of no decision by either the United States Supreme Court or this circuit that has held that the accumulation of time a defendant spends on death row during the prosecution of his appeals can accrue into

an independent constitutional violation, and Richmond has cited no such decision.

On the other hand, the State of Arizona has directed the court's attention to two relevant, though not controlling, precedents. In a decision affirmed two years later by the Tenth Circuit, the United States District Court for the District of Utah rejected a similar claim brought by a habeas corpus petitioner who had been on death row for ten years. *Andrews v. Shulsen*, 600 F.Supp. 408, 431 (D.Utah 1984), *aff'd*, 802 F.2d 1256 (10th Cir.1986), *cert. denied*, 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253, *reh'g denied*, 485 U.S. 1015, 108 S.Ct. 1491, 99 L.Ed.2d 718 (1988). The court reasoned that to accept the petitioner's argument would be "a mockery of justice" given that the delay was attributable more to the petitioner's actions than to the state's. *Id.* Like Richmond, the petitioner in *Andrews* had sought "extensive and repeated review of [his] death sentence." *Id.* Arizona also points to the well-known decision of the California Supreme Court in *People v. Chessman*, in which that court rejected the same claim by an eleven-year death-row inmate. 52 Cal.2d 467, 497, 341 P.2d 679, 699 (1959), *cert. denied*, 361 U.S. 925, 80 S.Ct. 296, 4 L.Ed.2d 241, *reh'g denied*, 361 U.S. 941, 80 S.Ct. 383, 4 L.Ed.2d 362 (1960). Finally, we note the decision of the United States Supreme Court in *Harrison v. United States*, 392 U.S. 219, 221 n. 4, 88 S.Ct. 2008, 2009 n. 4, 20 L.Ed.2d 1047 (1968), which the district court cited in its rejection of this claim and which held that an eight-year delay between an arrest and sentencing was not unconstitutional where the delay resulted from the need to assure careful review of an unusually complex case. *See Richmond*, 640 F.Supp. at 803 (citing *Harrison*).

Especially in light of the relative absence of contrary precedents, we believe that the reasoning of these cases is sound. A de-

---

**14.** Richmond actually alleged that fulfillment of his sentence after *thirteen* years on death row would constitute cruel and unusual punishment. Because he raised that claim in his opening brief, which was filed in 1987, we have added the past three years during which we deferred

submission of his appeal. We note, however, that because this appeal properly concerns Richmond's sentence only as of the date of its reimposition in 1980, the relevant period of his residency on death row is actually ten years.

fendant must not be penalized for pursuing his constitutional rights, but he also should not be able to benefit from the ultimately unsuccessful pursuit of those rights. It would indeed be a mockery of justice if the delay incurred during the prosecution of claims that fail on the merits could itself accrue into a substantive claim to the very relief that had been sought and properly denied in the first place. If that were the law, death-row inmates would be able to avoid their sentences simply by delaying proceedings beyond some threshold amount of time, while other death-row inmates— less successful in their attempts to delay— would be forced to face their sentences. Such differential treatment would be far more "arbitrary and unfair" and "cruel and unusual" than the current system of fulfilling sentences when the last in the line of appeals fails on the merits. We thus decline to recognize Richmond's lengthy incarceration on death row during the pendency of his appeals as substantively and independently violative of the Constitution.

## VIII

For the foregoing reasons, we affirm the judgment of the district court and deny Richmond's petition for a writ of habeas corpus.

AFFIRMED.

HARRY PREGERSON, Circuit Judge, with whom Judges HUG, NORRIS and REINHARDT join, dissenting from denial of rehearing en banc:

By declining to rehear this case en banc, this court sends a man to his death without undertaking even the minimal review that the Supreme Court continues to find appropriate in habeas cases. In this case, even the most deferential review of the record reveals that no rational sentencer could have concluded that Richmond's mental state was "especially heinous," as that term is defined by the Arizona Supreme Court. The Arizona Supreme Court's conclusion that Richmond's mental state was "especially heinous" turns on the assumption that he was driving the car when it ran over the victim. The identity of the driver,

however, was the subject of a credibility dispute. Neither the jury nor the trial court resolved that dispute, and the Arizona Supreme Court is incapable of resolving it rationally.

Moreover, the panel maintains that any error in the finding of an aggravating circumstance is harmless because the sentencing judge concluded that the mitigating circumstances were not sufficiently substantial to call for leniency. The panel's conclusion is based on the erroneous premise that Arizona law permitted the sentencing court to arrive at such a conclusion without weighing the aggravating factors against the mitigating circumstances. See *Richmond v. Lewis*, 921 F.2d 933, 947 (9th Cir.1990). By maintaining that Arizona's statute is not a weighing statute, the panel's opinion directly conflicts with Arizona case law and the prior decisions of this court. That case law demonstrates that in Arizona, the sentencer evaluates whether the mitigating evidence is sufficiently substantial to warrant leniency by weighing it against the aggravating factors. When an invalid aggravating factor is removed from the scales, the equation can change. Someone must reevaluate the mix of mitigating factors in light of the reduced gravity of the remaining valid aggravating factors.

## I

The panel's opinion acknowledges that the "especially heinous" aggravating circumstance is unconstitutionally vague on its face, but it concludes that the Arizona Supreme Court applied a sufficiently narrow construction of the facially vague term. Once a state appellate court has articulated a constitutionally sufficient narrowing construction of a facially vague aggravating circumstance, federal courts must still review the state courts' application of that narrowed definition to the facts of a particular case. That review is to be conducted under the deferential "rational factfinder" standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A state court's finding of an aggravating circumstance, including a state appellate court's finding that a mur-

der is "especially heinous," violates the Constitution if no reasonable sentencer could have made the finding. *See Lewis v. Jeffers,* — U.S. ——, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990).

In this case, no rational sentencer could have found that Richmond's mental state was "especially heinous" as that facially vague term has been narrowed by the Arizona Supreme Court. The limiting definition, as reported in the panel's opinion, requires that the sentencer make a factual finding about the defendant's mental state. "Heinous and depraved involve the mental state and attitude of the offender as reflected in his words and actions." *State v. Richmond,* 136 Ariz. 312, 666 P.2d 57, 64 (Ariz.1983), *quoted in Richmond v. Lewis,* 921 F.2d 933, 943 (9th Cir.1990). In addition, the Arizona Supreme Court tells us that "heinous" means "grossly bad" or "shockingly evil." The Arizona Supreme Court applies several factors to determine whether the "especially heinous" aggravating circumstance applies. In determining in this case that Richmond's mental state was grossly bad or shockingly evil, the Arizona Supreme Court mentioned only two of those factors: the infliction of gratuitous violence on the victim and the mutilation of the corpse. I believe that by focusing solely on those two factors in this case, the Arizona Supreme Court could draw rational inferences about the mental state of only one actor: the driver of the car:

> Here the victim was already unconscious and bleeding when he was run over not once, but twice, each time from a different direction. The evidence indicates that the first run by the vehicle was over the victim's head crushing his skull and killing him. The second run of the vehicle was over the body of the victim. The investigating officers found, at the location of the murder, two large pools of blood separated by about 30 feet, which was consistent with the body having been run over and dragged to where it was found.

*Id.,* quoted in *Richmond,* 921 F.2d at 943.

As this quotation demonstrates, the Arizona Supreme Court clearly focused on the actions of the driver when it determined that the facts warranted a finding that the killer's mental state was "especially heinous." The Arizona Supreme Court appeared to assume that Richmond was the driver. Yet neither the jury nor the sentencing court ever found that Richmond was the driver.

Indeed, the driver's identity has been vigorously disputed throughout this case. Faith Erwin provided the only testimony implicating Richmond as the fatal driver.[1] Richmond has always denied being the fatal driver, and he has witnesses to support him. In his statement to the police, Richmond said that Becky Corella backed the car up over the victim, then drove forward and ran over him again. *Richmond v. Ricketts,* 640 F.Supp. 767, 771 (D.Ariz. 1986). Corella did not testify.[2] A witness for Richmond testified that Erwin earlier reported that Corella had been driving. 640 F.Supp. at 778. The jury did not determine who drove the car. Because the jury was instructed on felony murder, the jury's verdict is consistent with either version.

At the sentencing hearing, Richmond submitted additional evidence to show that Corella was the lethal driver. 640 F.Supp. at 778–79. According to affidavits signed by two witnesses, Corella admitted being the driver. Moreover, an affidavit signed by the prosecutor in the original trial stated that Corella was prepared to testify "and accept blame for the killing." *Id.*[3]

Neither the jury, the sentencing court, nor the Arizona Supreme Court has ex-

---

**1.** Erwin received immunity in return for her testimony. *Richmond v. Ricketts,* 640 F.Supp. 767, 792 n. 30 (D.Ariz.1986).

**2.** Corella was granted immunity, but neither the prosecution nor the defense called her as a witness. *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41, 44 (1976).

**3.** In discussing the procedural history of the case, the panel's opinion mentions that Richmond filed one of these affidavits in a petition for post-conviction relief. 921 F.2d at 936. It does not discuss the other affidavits.

pressly resolved the dispute over who drove the car over the victim's body. Yet the Arizona Supreme Court's conclusion that Richmond's mental state was "especially heinous" turns on the tacit assumption that he was the driver.

Just as the jury's verdict did not necessarily determine that Richmond was the driver, the trial court's finding that the murder was "especially cruel or heinous" did not turn on any finding that Richmond was the driver. Nor did it turn on any conclusion about Richmond's mental state. At the time Richmond was sentenced in 1980, the Arizona Supreme Court had not yet narrowed the definition of "especially heinous" to restrict the application of that aggravating circumstance to determinations of the defendant's mental state or attitude. The sentencing court did not explain why it concluded that the aggravating circumstance applied, nor did it assume that Richmond was driving the car when the victim was run over. The findings and special verdict of the sentencing court do not even discuss the identity of the driver.

Nevertheless, the identity of the driver was an issue on appeal to the Arizona Supreme Court. While Richmond's case was on appeal, the United States Supreme Court decided *Edmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which held that the Constitution forbids capital punishment for certain types of felony murder convictions. In *Edmund*, the Court determined that states cannot execute defendants convicted of felony murder unless they actually killed, attempted to kill, or intended that a killing occur. *See Cabana v. Bullock*, 474 U.S. 376, 378, 106 S.Ct. 689, 693, 88 L.Ed.2d 704 (1986). Richmond contended that the ruling of *Edmund* should spare him from execution.

The Arizona Supreme Court's discussion of the *Edmund* argument is the only section of the state supreme court opinion that discusses the dispute over the driver's identity. As I read the opinion of the state supreme court, it determined that Richmond's *Edmund* argument was a loser no matter who drove the car. Even under Richmond's version of the facts, the court noted, Richmond's level of involvement in the crime was substantial enough that it satisfied *Edmund*, without regard to whether Richmond was responsible for the final lethal action. *See State v. Richmond*, 666 P.2d at 63.

Although the Arizona Supreme Court discussed the dispute over the identity of the driver, the Arizona courts resolved the *Edmund* question without determining whether or not Richmond drove the car. The Arizona Supreme Court was institutionally incapable of resolving the credibility dispute over the identity of the driver. *See Cabana v. Bullock*, 474 U.S. 376, 388 n. 5, 106 S.Ct. 689, 698 n. 5, 88 L.Ed.2d 704 (1986). Conceivably, the Arizona Supreme Court could have determined that the sentencing court actually made an *Edmund* finding, and could have further determined that such a finding was supported by the evidence. The record, however, shows that the sentencing court made no *Edmund* finding, nor did it determine whether Richmond or Corella drove the car over the victim.[4] The opinion of the panel confirms that it was the state supreme court, not the sentencing court, that resolved the *Edmund* question. *See Richmond* 921 F.2d at 948 ("Nor does it matter that the *Edmund* finding was made by the state supreme court rather than by the original sentencing court").

---

**4.** The opinion of the Arizona Supreme Court includes one sentence that suggests that the sentencing court resolved the credibility conflict and made a factual finding that Richmond drove the car. The court said that "the trial judge was justified in concluding that appellant drove the vehicle that was used to kill the victim." *State v. Richmond*, 136 Ariz. 312, 666 P.2d 57, 63 (1983). This sentence suggests that the Arizona Supreme Court believed that the trial court made a finding about the driver's identity. If so, then the court was mistaken. There is simply nothing in the record to suggest that the trial judge made *any* conclusion about whether Richmond or Corella drove the car. If any state court can be said to have determined the identity of the driver, it is the Arizona Supreme Court, not the sentencing court. Yet the Arizona Supreme Court could not rationally determine whether it was Richmond or Erwin who was telling the truth.

In sum, although the sentencing court may have been capable of resolving the dispute over the identity of the driver, it did not do so. The factfinder in this case can only be the Arizona Supreme Court. Yet the Arizona Supreme Court could not rationally resolve this factual dispute on the basis of a cold record. *See Cabana,* 474 U.S. at 388 n. 5, 106 S.Ct. at 698 n. 5. Nevertheless, the Arizona Supreme Court's conclusion that Richmond's mental state was "especially heinous" depends on the assumption that Richmond, not Corella, deliberately drove the car over the victim's body. Applying the deferential standard articulated by the Supreme Court, I do not see how, under these circumstances, any rational factfinder could conclude that the "especially heinous" aggravating circumstance, as narrowed and defined by the Arizona Supreme Court, applied in this case.

## II

Richmond was sentenced to death on the basis of three aggravating factors. Because Richmond does not challenge the application of two of those aggravating factors, the panel asserts in part IV.D. of its opinion that any error in applying the "especially heinous" aggravating circumstance is harmless. I strongly disagree. In Richmond's case, the trial court arrived at a verdict of death only after weighing the mitigating evidence against the aggravating factors. Because the ultimate sentencing determination in Arizona involves a balancing of the mitigating evidence against the aggravating factors, Arizona is a "weighing" state, as the Supreme Court used that term in *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 1446, 1450, 108 L.Ed.2d 725 (1990). If the sentencing court's balancing included a constitutionally invalid aggravating factor, the fact that the scales also contained a valid aggravating factor does not, as the panel believes, dispose of Richmond's claim. In weighing states, the rule of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), forbids such an "automatic rule of affirmance," because "it would not give defendants the individualized treatment that

would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons,* 110 S.Ct. at 1450. There must either be a resentencing, *see Creech v. Arave,* 928 F.2d 1481, 1489 (9th Cir.1991); *Adamson v. Ricketts,* 865 F.2d 1011, 1038–39 (9th Cir.1988) (en banc), or at a minimum, the Arizona courts must reweigh the defendant's mitigating evidence against the valid aggravating factors.

In expounding its view that any error in the finding of the "especially heinous" aggravating circumstance was harmless, the panel begins with the erroneous premise, which it advances without citing any case law, that Arizona is not a weighing state. *See Richmond,* 921 F.2d at 947. That premise is simply wrong. The language of the Arizona statute, as well as the cases of this court and the Arizona Supreme Court, establish that Arizona is indeed a weighing state.

It appears that the panel misreads Arizona law simply because the statute's text does not include the word "weigh." Nevertheless, it is clear that the statute requires weighing. If the trial court finds any aggravating circumstances, it must then make findings on the existence of mitigating circumstances. It is only after the trial court has made findings on the existence of both that it must make the sentencing decision. The statute requires a sentence of death if there are any aggravating circumstances "and there are no mitigating circumstances sufficiently substantial to call for leniency." Ariz.Rev.Stat. § 13–703(E).

Without citing any authority, the panel mistakenly concludes that the aggravating circumstances do not influence the Arizona sentencer's inquiry into whether the mitigating circumstances are sufficiently substantial. 921 F.2d at 947. On the contrary, it is clear that the trial judge determines whether the mitigating circumstances are "sufficiently substantial" by evaluating them in relation to the aggravating circumstances that exist. This is a balancing, a process of weighing.

Numerous cases of the Arizona Supreme Court confirm that the sentencer determines whether mitigating evidence is "sufficiently substantial" by weighing it against aggravating circumstances. *See, e.g., State v. Rossi,* 146 Ariz. 359, 706 P.2d 371, 379 (Ariz.1985) ("Once the trial judge finds that defendant's capacity was significantly impaired ... a mitigating factor arises which is then weighed against any aggravating circumstances that the trial judge may find to determine whether mitigating factors are sufficiently substantial to call for leniency"); *State v. Harding,* 670 P.2d 383, 397 (Ariz.1983) ("We have described the formula of 'sufficiently substantial to call for leniency' as involving the weighing of aggravating against mitigating circumstances on the basis of the gravity of each circumstance."); *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, 13 (1983) (determining whether mitigating circumstances are sufficiently substantial involves weighing and balancing of aggravating and mitigating circumstances that are present). The Arizona Supreme Court has clearly explained that determining whether mitigating circumstances exist is distinct from the final balancing test:

> [T]he trial court acts first as the fact finder. It must consider whether the state has proven any of the aggravating factors.... It must also determine whether the defendant has shown mitigating circumstances.... After the trial court has made these findings of fact, it then engages in a balancing test in which it determines whether the mitigating factors are sufficiently substantial to call for leniency.

*State v. Leslie,* 147 Ariz. 38, 708 P.2d 719, 730 (1985), *quoted in Adamson v. Ricketts,* 865 F.2d 1011, 1063 (9th Cir.1988) (en banc) (Brunetti, J., dissenting). The Arizona case law thus confirms that the panel in this case has misconstrued the operation of the Arizona statute.

The panel has not simply misinterpreted Arizona law; it has also overlooked our prior cases. Although some portions of our opinion in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988) (en banc), have not survived as good law, our description of the Arizona statute remains valid. We explained that after the parties have established the existence of aggravating and mitigating circumstances, "the court must weigh the aggravating circumstance(s) against the mitigating circumstance(s)." *Id.* at 1040; *see also id.* at 1065–66 (Brunetti, J., dissenting). In *Adamson,* the State of Arizona itself acknowledged that the statute requires the sentencer to balance. *See id.* at 1043.[5]

In Richmond's case, the trial court found that there were a number of mitigating circumstances. *See State v. Richmond,* 136 Ariz. 312, 666 P.2d 57, 65 (1983). It was only by comparing them to the aggravating circumstances that the sentencer concluded that they were not sufficiently substantial to warrant leniency. If a reviewing court's analysis reduces the number of valid aggravating circumstances, it reduces the weight and gravity of the aggravating factors that the sentencer may permissibly consider. The reviewing court can no longer rely on an earlier finding that the mitigating circumstances were not sufficiently substantial to call for leniency. A new balancing must be conducted in order to determine whether the mitigating circumstances are sufficiently substantial in relation to the remaining valid aggravating factors.

The panel fails to recognize that the findings of no mitigating circumstances sufficiently substantial to call for leniency is simply the end result of the balancing or weighing that the Arizona statute requires. It is not an isolated finding of fact. It depends on the nature and gravity of the aggravating circumstances. If the sentencing court weighed the mitigating circumstances against both valid and invalid

---

5. The panel's opinion also conflicts with our previous reading of the virtually identical language of Montana's capital sentencing statute. In Montana, as well as Arizona, the sentencer determines whether mitigating evidence is sufficiently substantial to warrant leniency by viewing it in relation to the aggravating circumstances that have been established. *See Smith v. McCormick,* 914 F.2d 1153 (9th Cir.1990).

aggravating circumstances, then the sentence of death cannot stand. At a minimum, there would have to be a determination whether the mitigating circumstances, when weighed against the remaining valid aggravating circumstances, were sufficiently substantial to call for leniency.

### III

Because no rational sentencer could have found that the "especially heinous" aggravating factor applied, Richmond is entitled to further proceedings in the state courts. Richmond presented a considerable amount of mitigating evidence at his sentencing hearing. Indeed, one justice of the Arizona Supreme Court would have reversed the sentence of death on the strength of the mitigating evidence. *See Richmond*, 666 P.2d at 69 (Feldman, J., dissenting). Richmond is entitled to have the Arizona courts reevaluate the strength of that mitigating evidence in relation to the valid aggravating factors, with the invalid "especially heinous" factor removed from the scales.